Argued November 5, 1973, affirmed October 3, 1974

# DAUGHERTY, *Petitioner, v.* OREGON STATE HIGHWAY COMMISSION, *Respondent.*

526 P2d 1005

*Thomas J. Moore* and *Mervin W. Brink,* Hillsboro, argued the cause and filed a brief for petitioner.

*Ridgway K. Foley, Jr.,* Portland, argued the cause for respondent. With him on the briefs were Souther, Spaulding, Kinsey, Williamson & Schwabe and James F. Spiekerman.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE,* HOLMAN, HOWELL, and BRYSON,* Justices.

McALLISTER, J.

This is an appeal by the Oregon State Highway Commission from a judgment entered against it in a wrongful death action brought by Richard E. Daugherty as the personal representative of the estate of his deceased wife, Mary L. Daugherty, who was killed when the automobile she was driving skidded on an icy bridge and collided with a logging truck. In the trial court the jury returned a verdict for plaintiff in the sum of $50,000. Defendant appealed to the Court of Appeals, which reversed the judgment. We granted review.

This action is brought under ORS 30.260 to ORS 30.330, commonly referred to as the Oregon Tort Claims Act. The pertinent provisions of that act are contained in section 30.265 and read as follows:

"(1) Subject to the limitations of ORS 30.260 to 30.300, every public body is liable for its torts and those of its officers, employes and agents acting within the scope of their employment or duties,

---

* Denecke and Bryson, JJ., did not participate in the decision of this case.

whether arising out of a governmental or proprietary function.

"(2) Every public body is immune from liability for:

* * * * *

"(d) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused. * * *"

The accident occurred on December 3, 1969 at about 8:30 a.m. where the state highway between Gaston and Forest Grove crosses the Scoggins Creek Bridge. Mrs. Daugherty was driving north and was nearly across the bridge when her Volkswagen skidded into the opposite lane where it collided with a logging truck proceeding in the opposite direction. It is undisputed that the pavement on the bridge at the time was slick with ice and that no signs warning of the icy condition had been posted.

The plaintiff alleged in his second amended complaint that the defendant Oregon State Highway Commission was negligent in the following particulars:

"1. In failing to inspect, care for and maintain Highway 47 and the bridge constituting a part thereof where it crossed Scoggin(s) Creek so as to discover and alleviate the slick and icy condition of the bridge.

"2. In failing to warn or advise the decedent of the hazard caused by the slick and icy condition of the bridge when defendant knew or should have known that said slick and icy condition existed."

The defendant Highway Commission is by statute vested with general supervision and control over

the maintenance, operation, and administration of all state highways. ORS 366.205,[1] 366.220 (1) and 366.305.

■ Much has been written, both in the decided cases and in legal literature, in an effort to draw a line between discretionary functions or duties as distinguished from ministerial or operational functions or duties.[2] This case, however, presents no problem in deciding whether the negligent acts were discretionary. We think the kind of highway maintenance involved in this case was clearly not discretionary, but merely minis-

---

[1]
 "(1) The commission shall determine and adopt the general policy relating to the administration of the Highway Division.

 "(2) The commission has general supervision and control over all matters pertaining to the selection, establishment, location, construction, improvement, maintenance, operation and administration of state highways, the letting of contracts therefor, the selection of materials to be used therein and all other matters and things considered necessary or proper by the commission for the accomplishment of the purposes of this Act.

* * * * *"

[2] Smith v. Cooper, 256 Or 485, 475 P2d 78, 45 ALR3d 857 (1970); Jarrett v. Wills, 235 Or 51, 383 P2d 995 (1963); State v. Abbott, 498 P2d 712 (Alaska 1972); Rogers v. State, 51 Haw 293, 459 P2d 378 (1969); Dalehite v. U.S., 350 US 15, 73 S Ct 956, 97 L Ed 1427 (1953); Indian Towing v. United States, 350 US 61, 76 S Ct 122, 100 L Ed 48 (1955); United Air Lines v. Weiner, 335 F2d 379 (9th Cir 1964), cert. dismissed 379 US 951 (1964); Swanson v. United States, 229 F Supp 217 (1964); American Exchange Bank v. U.S., 257 F2d 938 (7th Cir 1958); Fahey v. United States, 153 F Supp 878 (1957); Prosser, Torts, 973-974 (4th ed 1971); Note, Separation of Powers and the Discretionary Function Exception: Political Question in Tort Litigation Against the Government, 56 Iowa L Rev 930 (1971); Bennett and Sather, State Tort Liability—The Design, Construction and Maintenance of Public Highways—Vehicular Accidents, 19 Drake L Rev 33 (1969); Henke, Oregon's Governmental Tort Liability From a National Perspective, 48 Or L Rev 95 (1968); Reynolds, The Discretionary Function Exception of the Federal Tort Claims Act, 57 Geo L J 81 (1968); Note, The Discretionary Immunity Doctrine in California, 19 Hastings L J 561 (1968); Peck, The Federal Tort Claims Act—A Proposed Construction of the Discretionary Function Exception, 31 Wash L Rev 207 (1956).

terial or operational. If the defendant was negligent in the particulars alleged the judgment must stand.

We view the evidence in the light most favorable to plaintiff. Mrs. Daugherty had driven her husband to work at about 7:30 a.m. The plaintiff testified that his wife "didn't have any trouble" when she drove plaintiff to work. She was apparently driving her two children to school when the fatal accident occurred.

There is little dispute in the evidence although the witnesses are not in accord as to precisely when ice began to form on the bridges. The witnesses testified that the night had been cold but clear and dry. Some time before the accident ice had formed on the Scoggins Creek Bridge and by about nine o'clock a freezing rain began to fall. The plaintiff testified that at about nine o'clock ice began to form on the hand tools where he was working a few miles from the scene of the accident.

The truck driver testified that the accident happened at about 8:30 o'clock, a.m., and that as he approached the bridge the driving wheels of his truck were picking up ice and that the surface of the bridge was icy.

A witness, Frank Van Loo, who crossed the bridge immediately in front of decedent testified that there was no ice on the road before he reached the bridge, but that the bridge was icy. He testified that it had rained that morning, but he didn't remember whether it was raining at the time of the accident. After Van Loo passed the truck he looked in his rear view mirror and saw the Volkswagen skid into the log truck.

A state policeman arrived at the scene at about 9:30 a.m. He testified that when he arrived the bridge was

icy and that he had first noticed a freezing rain at about nine o'clock while on his way to the accident scene.

Vern H. Batdeen was foreman of the Newberg maintenance section in which the Scoggins Creek Bridge was located. He testified that there was about 100 miles of highway in his section and many bridges, although the number or location of the bridges was not disclosed. He testified that two trucks were assigned to his section and that these trucks were both on routine patrol during the night checking the highways. One of the truck drivers testified that he had crossed the Scoggins Creek Bridge and sanded it sometime between 3:30 and four o'clock, a.m.

There was evidence that there was no sand on the bridge at the time of the accident, but also evidence that sand would be blown off the travelled portion of the bridge by passing traffic.

Batdeen testified that signs bearing the word "ICE" were available at the section headquarters in Newberg, but that these signs were not posted unless the maintenance crew knew there was ice on the highway. He said that if the signs were used when there was in fact no ice motorists tended to ignore the signs and they became ineffective.

Batdeen further testified that bridge surfaces usually froze before the adjacent highways. He testified that he did not learn about any ice on the bridges or about any freezing rain until about nine o'clock, a.m. At that time both trucks were on patrol with Batdeen driving one and a second employee driving another. The location of the trucks when the defendant's employees

learned of the icy condition is not disclosed by the record. Batdeen testified:

"Q You knew that icy bridges presented a very hazardous condition. Did you know that that Scoggins Creek Bridge had any ice on it before the accident happened?

"A I did not know. The bridges we were working on when that ice came—that was what we were out there for was to sand those bridges. We were working towards that.

"Q But before this accident happened on the Scoggins Creek Bridge, did you have any knowledge that there was any ice on it?

"A No."

Batdeen testified that he kept informed about weather conditions by listening to weather reports by radio stations and that he communicated with both the state police and the highway department. He further said his two trucks were equipped with two-way radios so that the drivers could report unusual weather conditions encountered while they were on patrol.

■ If there was evidence that the defendant's employees knew or should have known that the Scoggins Creek Bridge was going to be covered with ice at about 8:30 a.m. on December 3, 1969, and had sufficient time to take remedial action which might have prevented this accident we would have no hesitation in affirming the judgment of the trial court. However, we have scrutinized the record with care and find no such evidence. The evidence establishes that ice began to form on the bridges and highways at about 8:30 a.m. and was accompanied by or followed closely by a freezing rain. There is no evidence that defendant's employees had any warning whatever that the freezing would occur. There is no evidence that any more accurate

weather reports or predictions were available than those received by defendant's employees.

There is no evidence where defendant's two trucks were when the freezing started. There is evidence that after the freezing started Batdeen was busy sanding other bridges and was "working toward that", possibly meaning toward the Scoggins Creek Bridge. There is no evidence about the other truck except that it was on patrol.

There is no evidence tending to prove that defendant's employees should have ignored other bridges and danger spots and hurried to sand the Scoggins Creek Bridge, nor any evidence that if they had done so they would have arrived in time to prevent this accident. We conclude that plaintiff has failed to prove that defendant's employees were negligent as alleged in his complaint and that the judgment of the Court of Appeals should be and is affirmed.