Argued May 22, resubmitted in banc July 26, reversed November 14, 1978,
petition for review denied February 21, 1979, 285 Or 319

## GALLISON, *Respondent,*
### *v.*
## CITY OF PORTLAND, *Appellant.*
### (No. 169566, CA 9900)

586 P2d 393

Thomas R. Williams, Deputy City Attorney, Portland, argued the cause for appellant. With him on the brief was Christopher P. Thomas, City Attorney, Portland.

D. Richard Hammersley, Portland, argued the cause for respondent. With him on the brief was Richard Springer, Portland.

JOHNSON, P. J.

Schwab, Chief Judge, and Tanzer and Roberts, Judges, did not participate in this decision.

**JOHNSON, P. J.**

Defendant City of Portland appeals from a judgment after a trial without a jury awarding plaintiff damages arising out of a two-car collision which occurred on October 5, 1976, at the intersection of two city streets. The trial court concluded that defendant was negligent in installing and failing to adequately inspect the traffic signal lights at the intersection. We reverse on the ground that the alleged acts or omissions were discretionary acts for which the city was immune from liability under ORS 30.265.

The accident occurred at night when plaintiff drove south on Southwest Broadway and collided with another car proceeding in the same direction on the off-ramp from Interstate 405. The two streets intersect at a 30 degree angle. There are four signal lights at the intersection, two facing north on Broadway, two facing north on the off-ramp. At the time of the accident, the lights facing Broadway were red and those facing the off ramp were green. Plaintiff contends the accident occurred because although the lights facing Broadway were red, he observed at least one green light indicating to him that he could proceed through the intersection.

In 1973, the City installed the four "3M model 131" lights at the intersection. Such lights are designed to focus intense light in the direction of the oncoming traffic but do not wholly prevent some peripheral light from escaping in other directions, particularly where the intersection is at a 30 degree angle as is the case here. Before 1973, the City had controlled this intersection by another type of signal light which had proven to be unsatisfactory and the source of several complaints from drivers. In summary, the city's witness testified that plaintiff may have been able to see the green light as well as the red light, but that the "3M" lights were the most feasible method of controlling this difficult intersection considering the existing state of technology. The city's witness also admitted

that a shield for the light could have been designed and manufactured. It was undisputed that the light was inspected after the accident and was found to be operating in accordance with the original design.

■ The perimeters of the discretionary function immunity afforded governmental agents and their principals are rather well settled in the area of road and street design and maintenance. *See Daugherty v. State Highway Commission,* 270 Or 144, 526 P2d 1005 (1974); *Smith v. Cooper,* 256 Or 485, 475 P2d 78 (1970); *Mayse v. Coos County,* 35 Or App 779, 583 P2d 7 (1978); *Jones v. Chehalem Park and Rec. Dist.,* 28 Or App 711, 560 P2d 686 (1977); *Lanning v. State Hwy. Commission,* 15 Or App 310, 515 P2d 1355 (1973); *Weaver v. Lane County,* 10 Or App 281, 499 P2d 1351 (1972). The general rule is that planning and designing of roads is a discretionary act. *Smith v. Cooper, supra.* This rule includes not only the actual design of the street, but also the placement and location of signs and signals. Indeed, we cannot see any distinction between the alleged defective design of the signal lights in this case and many of the alleged design failures for which the state was held to be immune from liability in *Smith v. Cooper, supra.*[1]

---

[1] In *Smith v. Cooper,* 256 Or 485, 475 P2d 78 (1970), the Oregon Supreme Court affirmed the quashing of service of summons where the complaint alleged, *inter alia,* the following:

" 'That at said time and place, the defendants, and each of them, were negligent in one or more of the following particulars:

" '(a) In designing, planning and maintaining a junction of said highways that reasonably causes the operator of a motor vehicle, and in particular the operator of a motor vehicle in which the deceased was a passenger:

" '(1) To be unable to reasonably observe the west turn from Highway 74 onto Highway 30 and

" '(2) To continue in a northerly direction on an extension of Highway 74 that is of similar surface, width, marking and construction and,

" '(3) To observe 'Dead End' signs on the extension of Highway 74, and

Plaintiff attempts to distinguish *Smith v. Cooper* by also contending that the City was negligent in failing to inspect and thus maintain the signals in a safe condition. Plaintiff's contentions in this regard are no

" '(4) To observe three (3) reflector posts on the Highway 74 extension that indicate straight highway ahead rather than a curve to the right, and

" '(5) To be unable to see anything but a void and empty space in the then northerly direction of travel;

all of which would and did reasonably cause said operator to become immediately confused, misled and uncertain as to his safety and to apply the motor vehicle brakes and go over the embankment aforesaid.

" '(b) In failing to place a guard rail on the left or northerly edge of the curved extension of Highway 74.

" '(c) *In failing to post an indicator of the west turn onto highway 30 within slowing distance of such turn.*

" '(d) *In posting signs indicating the route to westerly traffic on Highway 30 was reached by continuing straight ahead on highway 74 and the extension thereof.*

" '(e) *In failing to post a 'SLOW' warning sign for Highway 74 traffic proceeding north at said junction and intending to go west on Highway 30.*

" '(f) *In cluttering Highway 74 at said junction with numerous misleading and non-directional traffic signs.*

" '(g) *In failing to post warning of the sharp curve to the right on said extension of Highway 74.*

" '(h) *In posting the arrow indicator sign to turn west onto Highway 30 within approximately four (4) car lengths of such turn.*

" '(i) In providing a left turn off Highway 74 to Highway 30 west at the end of a mile, more or less, of straight highway, which turn was unbanked, without a turning radius and turned greater than 90 degrees to the left within one (1) car length.

" '(j) *In failing to provide lighting for said junction.*

" '(k) *In providing white painted 'center stripe' marking on Highway 74 at said junction that indicates continued 'straight ahead' approach to Highway 30 West.*

" '(l) *In failing to erect and maintain numerous reflectors to indicate the sharp right turn on the Highway 74 extension.*

" '(m) *For failing to post a large easily and readily observable 'arrow indicator' warning sign of the said left turn to Highway 30 West and to do so in such a manner and in such a position on Highway 74 that reasonable preparations could be made to safely slow the motor vehicle and turn left to Highway 30 West.*

" '(n) *There was no uniformity in the size, shape, color or placement of said left turn 'arrow' signs with other signs at other similar junctions or intersections through the State of Oregon.' " 256 Or at 509-10. (Emphasis supplied.)

different from those at issue in *Smith v. Cooper, supra,* wherein the court stated:

> "The complaint in VII(a) charges the defendants with negligence not only in the designing and planning of the junction but with negligence in 'maintaining' the junction. Because of the context in which 'maintaining' is used, we find it obvious that the plaintiff is using 'maintaining' in the sense that the defendants continued in effect the junction as planned and designed, including the planned and designed safety precautions or lack of safety precautions. Plaintiff is not using 'maintain' to mean keeping in a state of repair. For these reasons the charge against the defendants for the manner in which they 'maintain' the junction does not add anything to the charge of faulty 'designing and planning.' " 256 Or at 511-12.

*See also Mayse v. Coos County,* 35 Or App at 783.

■ Those cases following *Smith v. Cooper, supra,* wherein it was held that immunity did not exist because the alleged acts or omissions constituted "maintenance," all involved a failure to inspect, correct or warn of a condition such as ice on the road which was unrelated to the design. *See Daugherty v. State Highway Commission; Jones v. Chehalem Park & Rec. Dist.; Lanning v. State Hwy. Commission;* all *supra.* Here, the undisputed evidence was that the signals were inspected immediately after the accident and were found to be operating in accordance with the original design. Plaintiff's theory, which was adopted by the trial court, is not that the signals had fallen into disrepair, but rather that if they had been more adequately inspected the initial design defect would have been revealed. For the reasons stated, the design of the signals is a discretionary act for which the city is immune from liability.

Reversed.