Argued July 18, reversed October 22, respondent Stevenson's
and respondent Linder's reconsiderations denied November 29,
respondent's Stevenson's and respondent Linder's petitions for
review allowed December 11, 1979
See later issue Oregon Reports

# STEVENSON,
*Respondent,*

*v.*

# STATE ex rel DEPARTMENT OF TRANSPORTATION, HIGHWAY DIVISION,
*Appellant,*

# LINDER,
*Defendant-Cross-Claimant-Respondent.*

(No. 76-956-L, CA 10590)

601 P2d 854

Edward H. Warren, Portland, argued the cause and filed the brief for appellant.

Richard K. Lane, Grants Pass, argued the cause and filed the brief for respondent Dale Stevenson, personal representative for the estate of Brenda Fern Stevenson, deceased.

Wm. E. Duhaime, Medford, argued the cause for defendant-cross-claimant-respondent. With him on the brief was Brophy, Wilson & Duhaime, Medford.

Before Schwab, Chief Judge, and Thornton, Buttler and Joseph, Judges.

JOSEPH, J.

**JOSEPH, J.**

Defendant Oregon Department of Transportation, Highway Division (Division) appeals from a judgment entered on a jury verdict in a wrongful death action arising out of a car-truck collision at an intersection near Grants Pass. The personal representative of the estate of Brenda Stevenson brought the action against the Division and Linder, the driver of the car in which the deceased was a passenger.[1] Linder cross-claimed for damages against the Division. Both complaints alleged negligence on the part of the Division in connection with the traffic signal lights at the intersection. The verdict was in favor of plaintiff and in favor of Linder on his cross-claim.

Plaintiff's complaint contained these allegations of negligence:

"1. That Defendant knew or should have known of the malfunction of the traffic control signals at said intersection and failed to repair and maintain said signals in a proper working condition.

"2. That Defendant failed to properly shield or direct by visors, louvers, or other means each traffic control signal at said intersection so that an approaching motorist upon the Redwood Avenue could see only the signal controlling his movement.

"3. That Defendant failed to provide a clear and unmistakable indication to motorists approaching said intersection upon Redwood Avenue of their right of way assignment.

"4. That defendant knew or should have known of the improper indication of right of way assignment and improper shielding of said signals at said intersection and failed and neglected to promptly remedy said conditions so as to maintain said intersection in a safe and proper working condition."

Linder's cross-claim allegations were:

"B. In failing to repair and maintain said traffic signals in a proper working condition when it knew or

---

[1] Linder was granted a directed verdict on the allegations against him.

should have known that such signals were malfunctioning.

"C. In failing to properly shield or direct by visors, louvers or other means each traffic control signal at said intersection so that an approaching motorist on Redwood Avenue would only see the signal controlling Redwood Avenue.

"D. In locating the signal lights at the intersection in such a manner that they fail to provide a clear indication of right of way assignments to approaching motorists on both highways."[2]

The Division asserts that the trial court (1) improperly denied its motions for directed verdict on each allegation of negligence in plaintiff's complaint and cross-claimant's cross-claim; and (2) improperly denied its motions to strike each allegation. The motions were based on the grounds that there was no question of negligence to submit to the jury and that the alleged negligence was in the performance of discretionary functions for which it is immune.[3]

The accident occurred at the intersection of Redwood Avenue and Redwood Highway. The Linder vehicle, in which decedent was a passenger, entered the intersection from Redwood Avenue and collided with a truck which was traveling on Redwood Highway. All of the evidence indicated that the truck entered the intersection with a green light. The Linder vehicle entered the intersection without slowing, braking or taking any evasive action to avoid the truck.

The avenue and the highway parallel each other in a east-west direction for a considerable distance prior

_____

[2] Allegations "A" and "E" were removed from the jury's consideration.

[3] ORS 30.265 (3)(c):

"(3) Every public body and its officers, employes and agents acting within the scope of their employment or duties are immune from liability for:

"* * * * *

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

to their intersection. Immediately before the intersection, Redwood Avenue curves in a southerly direction to intersect with Redwood Highway at an angle. Because the avenue parallels the highway until just before the intersection, the traffic signal lights at the intersection which control traffic on the Redwood Highway are visible for some distance to motorists approaching the intersection on the avenue.

Evidence was introduced that the placement of the signals at the intersection had previously misled motorists on Redwood Avenue into believing that the signals which in fact controlled traffic on the Redwood Highway controlled their entry into the intersection. A driver on the avenue could not clearly observe the light signals actually intended to control his own entry into the intersection until he had rounded the curve and was almost at the intersection itself.

The signal control system was installed in 1975 by the Division. The system was designed with two signal lights controlling traffic entering from the avenue and two facing the east-west traffic on the highway. The signal lights controlling the traffic on the avenue were aimed directly at the stop line at the intersection, not on the angle of the avenue approaching the stop line around the curve. Evidence was introduced that that design element was based upon an assumed angle of vehicle entry into the intersection at an approximate right angle to the highway. The signal timing cycle was designed so that most cars approaching the highway from the avenue would be required to stop.

Since the installation of the signal system, there had been numerous complaints to the Division concerning its operation. Several witnesses testified that the system had frequently malfunctioned so that the lights for avenue and highway traffic were simultaneously the same color. (The last such complaint was received about three months before the accident.) There was also evidence that the claimed malfunction

was impossible. Other complaints concerned the timing of the signals, as well as the confusing visibility problem.

The Division conducted an inspection of the signal system on the day of the accident. It was a routine six month inspection and was completed about eight hours before the accident. No malfunction was discovered. Ten minutes after the accident, the system was checked by the investigating officers. It was functioning correctly. The next day the signals were again inspected by the Division and found to be operating properly.

There was no direct evidence tending to prove that any malfunction of the signals occurred at the time of the accident. Linder and the surviving passenger had no memory of the accident, and there were no other witnesses who had a view from Linder's side of the intersection. The evidence was that the signals were inspected shortly before and immediately after the collision and were found to be operating as designed. In sum, there was no evidence from which the jury could find that defendant knew or should have known that the signal lights were malfunctioning at the time of the accident except as speculation to explain a mysterious occurrence. *Ritter v. Sivils*, 206 Or 410, 413-14, 293 P2d 211 (1956); *Daugherty v. State Highway Commission*, 270 Or 144, 526 P2d 1005 (1974). The trial court erred in permitting the jury to consider plaintiff's allegation "1" and cross-claimant's allegation "B."

Plaintiff's and cross-claimant's other allegations assert defendant's negligence regarding the location and maintenance of the signal lights, as well as the failure to shield the signals or direct their light by visors or louvers so that a motorist on the avenue approaching the intersection could only see the signal controlling avenue traffic. There was evidence that additional devices such as louvers and longer visors would have helped to reduce the potential for confu-

sion at the intersection and aided in indicating the right of way.

■ Determining the need for louvers, longer visors or other means of directing traffic by signal lights is a discretionary function. In *McBride v. Magnuson,* 282 Or 433, 437, 578 P2d P2d 1259 (1978), the Supreme Court stated that

> "*** insofar as an official action involves both the determination of facts and simple cause-and-effect relationships and also the assessment of costs and benefits, the evaluation of relative effectiveness and risks, and a choice among competing goals and priorities, an official has 'discretion' to the extent that he has been delegated responsibility for the latter kind of value judgment."

A decision to shield the lights, to lengthen the visors, or to devise other means of redesigning the signal light system requires a balancing of the factors identified in *McBride*.

We have recently held that the placement and location of signs and signals is a discretionary act to which immunity attaches. *Gallison v. City of Portland,* 37 Or App 145, 586 P2d 393, *rev den,* 285 Or 319 (1978).

> "*** The perimeters of the discretionary function immunity afforded governmental agents and their principals are rather well settled in the area of road and street design and maintenance. *See Daugherty v. State Highway Commission, [supra]; Smith v. Cooper,* 256 Or 485, 475 P2d 78 (1970); *Mayse v. Coos County,* 35 Or App 779, 583 P2d 7 (1978); *Jones v. Chehalem Park and Rec. Dist.,* 28 Or App 711, 560 P2d 686 (1977); *Lanning v. State Hwy. Commission,* 15 Or App 310, 515 P2d 1255 (1973); *Weaver v. Lane County,* 10 Or App 281, 499 P2d 1351 (1972). The general rule is that planning and designing of roads is a discretionary act. *Smith v. Cooper, supra.* This rule includes not only the actual design of the street, but also the placement and location of signs and signals." 37 Or App at 148.

Plaintiff's and cross-claimant's allegations of negligence concern a hazard which "was created in the

process of road design and construction." *Mayse v. Coos County, supra.*

"*** Thus, plaintiff does not assert that defendants' failure to maintain the road caused an unsafe condition to occur, but rather that the County failed to eliminate an unsafe feature which was a component of the design of the road. Anomalously, the essence of plaintiff's claim is not a failure of maintenance, but rather that the defendants maintained the road as designed instead of changing it. The decision to change a design, like the design itself, is a discretionary act. *Smith v. Cooper, [supra]."* 35 Or App at 783.

Reversed.

**BUTTLER, J.,** specially concurring.

While I concur in the court's opinion, I do so with respect to that portion of it which holds that the need for louvers or longer visors on traffic signal lights, which the evidence shows would have helped to reduce the hazard at the intersection, involves the kind of discretion which gives rise to immunity only because I recognize that our recent decision in *Gallison v. City of Portland*, 37 Or App 145, 586 P2d 393 (1978), *rev den* 285 Or 319 (1979), requires that result. In *Gallison*, we thought that *Smith v. Cooper*, 256 Or 485, 475 P2d 78, 45 ALR3d 857 (1970), precluded a different result, and perhaps it does. If so, it ought to be reexamined.