Argued and submitted March 4, reversed with instructions November 4, 1980

## STEVENSON,
*Petitioner,*

*v.*

## STATE ex rel DEPARTMENT OF TRANSPORTATION, HIGHWAY DIVISION,
*Respondent,*
*and*
## LINDER,
*Petitioner.*

(No. 76-956-L, CA 10590, SC 26610, 26623)

619 P2d 247

Richard K. Lane, of Brown, Hughes, Bird & Lane, Grants Pass, argued the cause and filed the briefs for petitioner Dale Stevenson.

William E. Duhaime, of Brophy, Wilson & Duhaine, Medford, argued the cause and filed the briefs for petitioner James Linder.

Edward H. Warren, Portland, argued the cause and filed the brief for respondent State of Oregon.

Clayton C. Patrick and Michael R. Shinn, Salem, filed the brief amicus curiae on behalf of Oregon Trial Lawyers Association.

Before Denecke, Chief Justice, and Tongue, Howell, Lent, Peterson and Tanzer, Justices.

DENECKE, C. J.

## DENECKE, C. J.

This case requires us to consider the meaning of the provision in the Tort Claims Act that public bodies are immune from tort liability arising out of the performance of a discretionary function.

The action is against the State of Oregon by the plaintiff Stevenson for wrongful death and by the cross-claimant Linder for personal injuries resulting from a collision between a truck and a passenger car at the intersection of Redwood Avenue and the Redwood Highway near Grants Pass. The intersection is controlled by traffic signals which normally remain green for Highway traffic unless a change in the lights is activated by vehicles passing over sensors in the Avenue. The truck was on the Highway and, according to undisputed testimony, entered the intersection with a green light. There was no direct evidence about the color of the light controlling traffic on the Avenue at the time the car entered the intersection.[1] Witnesses who saw the car enter the intersection testified that its driver did not brake, slow, or take any apparent evasive action.

The case was presented to the jury on two alternative factual charges of negligence against the state highway division. One theory was that the signal lights, at the time of the accident, were malfunctioning and showed green in both directions. The other was that the arrangement and design of the signals were deceptive so that motorists on the Avenue, until they rounded a curve leading directly into the intersection, could see the light governing traffic on the Highway and thus be led to believe that Avenue traffic had a green light when in fact it did not. The state was alleged to be negligent in failing to shield the Highway light so as to prevent this misleading effect.

The trial court overruled the state's motions for a directed verdict and to withdraw from the jury's consideration the allegations of negligence supporting each of these theories. The jury returned a verdict in favor of the car's

---

[1] Of the three persons in the car, one died as a result of the accident and the other two have no memory of what happened.

injured driver and the estate of the deceased passenger, finding that 65% of the negligence which caused the accident was attributable to the state and 35% to the driver. The Court of Appeals reversed. *Stevenson v. State of Oregon,* 42 Or App 747, 601 P2d 854 (1979).

We conclude the Court of Appeals was in error in holding that there was no evidence from which the jury could find that at the time of the fatal collision the light malfunctioned and showed green in both directions. The signal light was installed in August 1975 and there was evidence that from that time on there were complaints of malfunction. There was evidence that these malfunctions occurred up to the time of the fatal collision and thereafter. The Highway Division personnel were aware of these complaints and made frequent inspections but the jury could find that whatever the cause these malfunctions had not been corrected at the time of the collision.

■      The evidence was that the light was green for the truck. There was no direct evidence of the color of the light for the passenger car; however, the evidence was that it entered the intersection without braking or slowing down. From the evidence of the malfunctions and the conduct of the driver of the car the jury could properly infer that the light was green for the passenger car as well as the truck, and the state was negligent in failing to correct this malfunction.

The other allegations of negligence present the substantial problem in this case. The evidence would permit a finding that highway division employes were negligent in failing to provide shields adequate to prevent motorists on the Avenue from being misled by the green light governing traffic on the Highway. The state argues, however, that determining the need for such a change in equipment is a discretionary function, and that the state cannot, under the provisions of the Tort Claims Act, be held liable for a negligent exercise of that discretion.

ORS 30.265(3), which is part of the Tort Claims Act, provides:

"Every public body and its officers, employes and agents acting within the scope of their employment or duties are immune from liability for:

"\* \* \* \* \*.

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

We granted review in this case because we were concerned that in at least some kinds of situations questions of discretionary immunity under the statute were being decided by a mechanical or semantic approach; that is, were the state employees engaged in designing or planning, in which case they would be immune, or in maintenance, in which case they would not be immune. *See Smith v. Cooper,* 256 Or 485, 475 P2d 78, 45 ALR3d 857 (1970).

The issue in *Smith v. Cooper, supra,* concerned the common law immunity of public officers and employes rather than the statutory immunity of public bodies. It was decided after the enactment of the Oregon Tort Claims Act, but the act did not apply in that case because the cause of action had arisen before its effective date. We noted that our prior case law had established that public employes were not liable for negligently performing a discretionary function, and identified two possible reasons for the doctrine of public employes' immunity:

"Judge Learned Hand stated that the doctrine of immunity for public employees was based upon a policy of freeing public employees from fear of retaliation for unpopular decisions so that they could function freely and thereby give unflinching discharge of their duties. *Gregoire v. Biddle,* 177 F2d 579, 581 (2d Cir 1949), cert den 339 US 949, 70 S Ct 803, 94 L Ed 1363 (1950). Prosser also believed that public employees would be unduly intimidated in the discharge of their duties if they could be sued for actions which later were determined to be negligent. Prosser, Law of Torts (3d ed), 1014. Another reason advanced for the immunity of state employees is that without immunity, highly skilled employees would not accept public positions because the potential liability was not commensurate with the relatively low compensation that public bodies pay. Van Alstyne, *Government Tort Liability: A Public Policy Prospectus,* 10 UCLA L Rev 463, 474, 478 (1963)." 256 Or at 493-94.

In our discussion of how to determine when a public employe is performing such a function we examined, in addition to cases involving the common law immunity of public

employes, the interpretations given by the federal and California courts to those jurisdictions' respective tort claims acts. Those statutes, like ours, provide immunity from liability for both the government and its employes arising out of the performance of a discretionary function.[2] The term "discretionary" in those statutes, as in ours, appears to have the same meaning when applied to governmental immunity as it does when applied to public employes' immunity.

When we decided *Smith v. Cooper* we were mindful that although the case was not governed by the Tort Claims Act our decision would be important to the future construction of the statute. See 256 Or at 506, n 4, and opinion of Sloan, J., dissenting, at 513. Because the statutory standard is the same for both governmental and public employes' immunity, we examined the reasons for both kinds of immunity when considering the meaning of the term "discretionary function." With respect to governmental immunity we said:

> "The most decisive factor but one most difficult to articulate is that it is essential for efficient government that certain decisions of the executive or legislative branches of the government should not be reviewed by a court or jury. The reason behind such factor is that the bases for the legislative or executive decision can cover the whole spectrum of the ingredients for governmental decisions such as the availability of funds, public acceptance, order of priority, etc." 256 Or at 506.

---

[2] The federal act provides:

"The provisions of this chapter and section 1345(b) of this title shall apply to —

"(a) Any claim based upon * * * the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 USC § 2680.

The California Government Code provides that, with certain exceptions, "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability,"§ 815.2(b), and that

"* * * a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." § 820.2.

We examined the allegations of negligence in that case in light of that factor:

"These allegations charge conduct by the executive branch of the government which should not be reviewed by the judicial branch. The decisions that were made to do or not to do these things appear to have been dependent upon considerations that a court or jury should not consider, particularly by hindsight, such as the funds available for the project, the amount of additional land necessary to make a more gradual curve, the cost of the land, the loss of the land for recreational or agricultural purposes, the amount and kind of traffic contemplated, the evaluation of traffic and safety, technical data, etc." 256 Or at 511.

Immediately following this explanation, we said:

"We hold that state employees are generally immune from liability for alleged negligence in planning and designing highways." *Id.*

This broad statement has resulted in a line of cases analyzing problems of public liability for injuries caused by road and highway conditions by attempting to determine whether the alleged defect was the result of planning and design on the one hand or of "maintenance" on the other. *See, e. g., Daugherty v. State Highway Comm.,* 270 Or 144, 147, 526 P2d 1005 (1974); *Hamilton v. State,* 42 Or App 821, 827, 601 P2d 882 (1979); *Gallison v. City of Portland,* 37 Or App 145, 148, 586 P2d 393 (1978) *rev den* 285 Or 319 (1979); *Mayse v. Coos County,* 35 Or App 779, 782, 583 P2d 7 (1978); *Jones v. Chehalem Park & Rec. Dist.,* 28 Or App 711, 716-17, 560 P2d 686 (1977); *Lanning v. State Hwy. Comm.,* 15 Or App 310, 316, 515 P2d 1355 (1973); *Weaver v. Lane County,* 10 Or App 281, 288-89, 499 P2d 1351 (1972).

The distinction made between highway planning or design and maintenance may have been an overgeneralization even when it was made with reference to the original Oregon Tort Claims Act; it is an overgeneralization when applied to the present version of the statutes providing for recovery against governmental entities and public employes. Or Laws 1975, ch 609.

■ The decisions that make up planning and design of highways and their maintenance involve the exercise of two very different kinds of judgment. First, there is the exercise of what we may term governmental discretion or

policy judgment. The decision to build a highway rather than a railroad track is such a decision. When a governmental body by its officers and employes makes that kind of decision the courts should not, without clear authorization, decide whether the proper policy has been adopted or whether a given course of action will be effective in furthering that policy. This is the modern rationale for governmental immunity for discretionary acts.[3] We have no doubt that when the legislature provided immunity for discretionary acts it intended to provide immunity for those kinds of decisions. We described this kind of discretion in *McBride v. Magnuson,* 282 Or 433, 437, 578 P2d 1259 (1978):

> "* * * Discretion, as this court has noted in other contexts, involves 'room for policy judgment,' *Smith v. Cooper,* 256 Or 485, 502, 475 P2d 78, 45 ALR3d 857 (1970), quoting *Dalehite v. United States,* 346 US 15, 36 (1953), or the responsibility for deciding 'the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued,' *Antin v. Union High School Dist. No. 2,* 130 Or 461, 469, 280 P 664 (1929). It involves the delegated responsibility for 'assessment and ranking of the policy objectives explicit or implicit in the statute' and for the judgment that one or more of these objectives will be served by a given action, *Dickinson v. Davis,* 277 Or 665, 673, 561 P2d 1019 (1977). * * *."

Like virtually every other activity, both planning and design, as well as maintenance of roads, frequently require the making of decisions which do not involve the making of public policy; for example, the decision whether to make a safety fence two feet rather than three feet high or the decision to first remove the snow from street A rather than from street B. These decisions involve the use

---

[3] *See, e.g.,* Jaffe, Judicial Control of Administrative Action 241, 259 (1965); James, *Tort Liability of Governmental Units and Their Officers,* 22 U Chi L Rev 610, 651 (1955); Peck, *The Federal Tort Claims Act: A Proposed Construction of the Discretionary Function Exception,* 31 Wash L Rev 207, 240 (1956); Herzog, *Liability of the State of New York for "Purely Governmental" Functions,* 10 Syracuse L Rev 30, 32-33 (1958); Reynolds, *The Discretionary Function Exception of the Federal Tort Claims Act,* 57 Geo L J 81, 121-23 (1968); Note, Separation of Powers and the Discretionary Function Exception: Political Question in Tort Litigation Against the Government, 56 Iowa L Rev 930, 950-51 (1971); Comment, The Discretionary Function Exception to Government Tort Liability, 61 Marquette L Rev 163, 166 (1977).

of "discretion" in the sense that a choice must be made but they do not involve the use of "discretion" in the sense that a policy decision is required.

These nonpolicy decisions may be such that the court can quite easily understand the factors or ingredients which should be considered in reaching the decision; for example, the decision whether to remove the snow from Street A rather than Street B. On the other hand, nonpolicy decisions might involve extremely technical considerations requiring specialized education and experience by the decision maker; for example, given certain soil and moisture conditions, how steep can the sides of a highway cut be made.

That decisions require expertise does not, for that reason alone, make such decisions discretionary in the sense that there is immunity from liability for injuries caused by the making of such decisions. That the decisions involve very technical considerations will make it difficult for jurors or judges to completely assess the decision to determine if it was made with reasonable care, but the same difficulty is encountered when jurors and judges are called upon to assess the decision of a private party which involves very technical considerations; for example, whether the drug Chloroquine was reasonably safe for the treatment of ankylosing spondylitis. *Cochran v. Brooke,* 243 Or 89, 92, 409 P2d 904 (1966).

The distinction between a technical nonpolicy decision and a governmental policy decision was noted in *Griffin v. United States,* 500 F2d 1059, 1066 (3d Cir 1974):

"We acknowledge that under [the government's] construction of the regulation, the implementation called for a judgmental determination as to the degree to which each of the enumerated criteria indicated neurovirulence in monkeys. The judgment, however, was that of a professional measuring neurovirulence. It was not that of a policy-maker promulgating regulations by balancing competing policy considerations in determining the public interest. Neither was it a policy planning decision nor a determination of the feasibility or practicability of a government program. At issue was a scientific, but not policy-making, determination as to whether each of the criteria listed in the regulation was met and the extent to

which each such factor accurately indicated neuroviru-
lence. * * *."

There is only one apparent reason for providing
immunity from liability for the negligence of public em-
ployes who are required to make nonpolicy decisions in-
volving highly technical considerations and the necessity of
having expertise and that is the old rationale for govern-
mental immunity generally; that is, the public interest in
recruiting able public servants and encouraging them to
exercise their expert judgment freely, uninfluenced by the
fear of personal liability should their judgment later be
questioned in court.

This public interest, however, now has been
advanced by the legislature in a manner different than by
providing immunity for such employes. In 1975, the legisla-
ture amended the Tort Claims Act to require that public
bodies defend and indemnify their employes against all tort
claims arising out of the performance of their duties, except
for claims involving "malfeasance in office or willful or
wanton neglect of duty."[4] The effect of this amendment is
to eliminate the ground for concern by public employes that
they can be held liable for a good faith failure to use
reasonable care.

The California Supreme Court has pointed out that
a comparable statutory indemnification scheme in that
state substantially eliminates the concerns that support
the doctrine of public employes' immunity:

> "* * * The public employee need not suffer concern over
> the possibility that he will be compelled to finance and
> oversee a tort suit filed against him personally; the statute
> provides for defense by the public entity upon notice, and
> the employee's best interests clearly favor the giving of
> such notice. Moreover, the public employee faces only a

---

[4] ORS 30.285, as amended, provides, in part:

"(1) The governing body of any public body shall defend, save harmless
and indemnify any of its officers, employees and agents, whether elective or
appointive, against any tort claim or demand, whether groundless or other-
wise, arising out of an alleged act or omission occurring in the performance of
duty.

"(2) The provisions of section (1) of this section do not apply in case of
malfeasance in office or wilful or wanton neglect of duty."

slim danger of ultimate personal liability; such liability attaches only to the rare instances of injuries arising from acts either outside of the scope of employment or performed with actual fraud, corruption, or malice. Indeed, a principal purpose of the indemnification scheme * * *, limiting the personal threat of suit or liability, centered on assuring the zealous execution of official duties by public employees. To the extent that the ardor of public employees might be affected by the threat of personal liability, these fears will be allayed by the indemnification provisions." *Johnson v. State,* 69 Cal2d 782, 73 Cal Rptr 240, 447 P2d 352, 359 (1968) (Footnotes omitted.)

Similarly, under our statutory scheme, public employees have, in addition to the immunity expressly provided by statute,[5] the right to call upon their employer to defend any action and pay any judgment based on the performance of their duties unless the claim is based on aggravated misconduct. Whether the limited exceptions apply is determined not by the allegations of the third party's complaint but by the Attorney General after investigation. ORS 30.285(3). The legislature has thus eliminated the reasons for concern that the prospect of personal liability might dampen the ardor of public employes in the performance of their duties or discourage able persons from accepting responsible employment in the public sector. To the extent that a public employe's job performance may be influenced

---

[5] In addition to immunity for claims arising out of the performance or nonperformance of a discretionary function, ORS 30.265(3) provides immunity from liability for:

"(a) Any claim for injury to or death of any person covered by any workmen's compensation law.

"(b) Any claim in connection with the assessment and collection of taxes.

"* * * * *.

"(d) Any claim which is limited or barred by the provisions of any other statute.

"(e) Any claim arising out of riot, civil commotion or mob action or out of any act or omission in connection with the prevention of any of the foregoing.

"(f) Any claim arising out of an act done or omitted under apparent authority of a law, resolution, rule or regulation which is unconstitutional, invalid or inapplicable except to the extent that they would have been liable had the law, resolution, rule or regulation been constitutional, valid and applicable, unless such act was done or omitted in bad faith or with malice."

by concern about possible liability for "malfeasance in office or willful or wanton neglect of duty" the influence is likely to be a salutary one. We think it unlikely that the legislature intended a broad construction of the discretionary function exception in order to eliminate those kinds of concerns.

■    When applying that provision, then, the inquiry is whether the function in question involves the exercise of what we have described as governmental or policy discretion. We are well aware that in stating this conclusion we do not provide a readily-applied method for deciding close cases. There are, of course, circumstances in which it is clear merely from a description of the decision in question that governmental discretion was necessarily involved. Examples are the decision to build a new highway or to initiate a new governmental program. In other situations, however, no determination about immunity will be possible until it is known how the particular decision was made.

The facts of the following two cases illustrate the kinds of administrative decisions in which governmental discretion may or may not have been exercised: In *State v. Webster,* 88 Nev 690, 504 P2d 1316 (1972), the court held that the state was not necessarily immune from liability when the negligence charged was the failure of the highway authorities to install a cattle guard at a particular entrance to a controlled-access freeway. In *Lewis v. State,* 256 NW2d 181 (Iowa 1977), the state's motion to dismiss on the pleadings was held properly overruled when the negligence alleged was a failure to design and construct a portion of an interstate highway so as to prevent vehicles from crossing from the northbound lanes into the southbound lanes.

■    One clue to whether governmental discretion was exercised is to examine the level of administration at which the decision claimed to be "discretionary" was taken and whether there is evidence of delegation of responsibility for policy choice to that level, as distinguished from the routine decisions which every employe must make in every action he or she takes. *Cf. Brennen v. City of Eugene,* 285 Or 401, 591 P2d 719 (1979); *McBride v. Magnuson, supra,* 282 Or 433. If the responsible officials had determined, for

example, that their budgets would not permit them to provide all desirable safety features and that the public would be better served by facilities other than cattle guards or median barriers, that would constitute the immune exercise of governmental discretion. If, on the other hand, they had decided to install cattle guards or median barriers wherever certain kinds of conditions existed and the failure to install them in a particular location was the result of a failure to determine that those conditions did in fact exist at that location, no exercise of judgment about governmental policy would be involved.

Similar examples can be given in the area of what is normally considered to be road or highway maintenance. The appropriate agency might decide, for example, that its budget would permit the repaving of either of two sections of a highway but not both. The decision to repair one rather than the other would not be grounds for tort liability if made in the deliberate exercise of the agency's authority to set such priorities. The discretionary function immunity would not, however, necessarily insulate the agency from liability for the negligent performance by its employes of certain tasks related to such a decison — for example, determining the extent of the actual disrepair in each section and the kinds of hazards that existed as a result.

The case before us is one in which the nature of the underlying decision by highway division employes — whether to provide special shielding on the highway traffic lights or to make other changes to eliminate the alleged misleading condition — might or might not have been made in the exercise of governmental discretion.

■ ■ The burden is on the state to establish its immunity. In some instances, the nature of the function alone is sufficient to establish immunity. In other instances, evidence of how the decision was made is necessary. The California court reached a similar conclusion in *Johnson v. State, supra,* 447 P2d at 361, n 8. *Accord: King v. City of Seattle,* 84 Wash2d 239, 525 P2d 228, 233 (1974).

The state has argued that there is immunity in this case because the arrangement of the traffic lights and the design of their shielding were appropriate matters for

engineering judgment. It may be conceded that this is so, but there is nothing in the record to suggest that the responsible employes of the highway division made any policy decision of the kind we have described as the exercise of governmental discretion.

■ There is frequent reference in the testimony to the guidelines for traffic signals in the Uniform Traffic Control Device Manual, a set of national standards which have been adopted by the state highway division. The state does not, however, contend that anything in the manual prevented appropriate changes to existing traffic signals in order to eliminate a hazardous condition. The state concedes that if the statutory discretionary immunity does not apply there was evidence from which the jury could find that its employes' engineering judgment was negligently exercised. We hold that on this record the state was not immune by virtue of ORS 30.265(3)(c) as a matter of law.

The trial court did not err in refusing to withdraw from the jury's consideration the question of negligence involving inadequate shielding of the highway traffic lights.

Reversed with instructions to reinstate the judgment for the plaintiff.

**TANZER, J.,** concurring.

I write separately because I believe the allegations of negligence based on placement and shielding of the signal can be analyzed more simply and clearly. Particularly, the responsibility of judge and jury in determining whether acts are discretionary or nondiscretionary should be delineated in light of the facts of this case.

I agree that "design" and "maintenance," as those terms are used in *Smith v. Cooper,* are often analytically helpful as a shorthand sorting device, but may not be an adequate formula for the decision of close cases. Particularly, they do not provide an appropriate division of discretionary and nondiscretionary acts in this case. The underlying theory of *Smith v. Cooper,* however, that executive and legislative decisions involving governmental decisions are not subject to judicial review, provides a sound basis

for analysis in this case and I take it that that theory is reaffirmed.

The preliminary question of law before the court is whether the acts alleged as negligent are immune. If there is no dispute of fact, this can be done prior to trial.[1] If the facts are disputed, the court should identify the facts upon which the jury can find liability and those upon which there can be no liability and instruct the jury appropriately.

Here, the second allegation of negligence was that the signal on the highway was improperly shielded to avoid peripheral visibility:

"(2) That defendant failed to properly shield or direct by visors, louvers, or other means each traffic control signal at said intersection so that an approaching motorist upon the Redwood Avenue could see only the signal controlling his movement.

The analysis should be in two steps:

(1) The Highway Division adopted the Uniform Traffic Control Device Manual, as a set of national standards for traffic signals. That adoption of policy was an act of governmental discretion under ORS 30.265(3)(c); the state is therefore immune from liability for any claim resulting from that discretionary act, even if discretion was abused.

---

[1] In *Comley v. State Bd. of Higher Ed.,* 35 Or App 465 at 468-69, 582 P2d 443 (1978), the Court of Appeals observed:

"The issue of immunity may properly be raised by demurrer, *Smith v. Cooper,* 256 Or 485, 488, 475 P2d 78, 45 ALR3d 857 (1970), but that is not the only means of interposing an immunity defense. *Wright v. Scappoose School Dist.,* 25 Or App 103, 106, 548 P2d 535 (1976). The determination of whether immunity precludes a plaintiff's recovery is a question of law for the court. *Weaver v. Lane County,* 10 Or App 281, 299, 499 P2d 1351 (1972). As such, unless it is waived, the defense may be raised in any pleading or motion appropriate for joining legal issues. *See, e.g., Hulen v. City of Hermiston,* 30 Or App 1141, 569 P2d 665 (1977) (motion to strike treated as demurrer); *Lanning v. State Hwy. Comm.,* 15 Or App 310, 515 P2d 1355 (1973) (motion for directed verdict and nonsuit); *Sullivan v. State,* 15 Or App 149, 515 P2d 1355 (1973) (motion for directed verdict); *Weaver v. Lane County, supra* (motion for judgment N.O.V.). Summary judgment is appropriate where there are no material issues of fact and the moving party is entitled to judgment as a matter of law. ORS 18.105(3). If there are no disputed facts relevant to the issue of immunity, it may therefore be raised and resolved on a motion for summary judgment. *See, Higgins v. Redding,* 34 Or App 1029, 580 P2d 580 (1978)."

(2) The making and installation of a particular signal is an act in implementation of that policy. If it is done in conformity to that policy, then it is immune as part of the "discretionary function or duty." If the implementation is done in conformity with the policy, it has the protection of law accorded to the policy itself. If not, and if there is no other discretionary reason for the deviation from policy then there is no immunity.

The discretionary decision applicable to the second allegation of negligence is found in the manual. The manual begins with general provisions that traffic control devices should be safe, effective, etc. The provision specifically applicable to the allegation in this case deals with direction and shielding of signals:

> "* * * each signal indication shall, to the extent practicable, be shielded or directed by visors, louvers, or other means so that an approaching driver can see only the indication controlling his movement. Tunnel visors exceeding 12 inches in length shall not be used on free swinging signals." Manual, Part IV, B-11, page 224.

Under these circumstances, the preliminary determination of law for the court is simply that if the signal was shielded and directed as required by the manual, the defendant is immune from liability; if not, the court may enforce liability.

For various procedural reasons, the trial court did not go through the process of identifying immune and non-immune conduct. The net result, however, was the same. There is no need for an instruction to mention the terms "immunity" or "discretionary function or duty" if the court simply instructs them as to which facts are actionable and which are not. There was evidence that a driver on the avenue can see another signal indication than that controlling his movement. The case was submitted to the jury under instructions that installation of a signal in a manner which allows that condition can be negligence. That instruction identified for the jury, as a matter of law, the acts which would constitute non-immune, non-discretionary conduct. There is no reversible error on the second allegation of negligence.

Therefore, I concur with the majority that the judgment must be reinstated.