Argued and submitted March 14, 1980, reversed and
remanded for further proceedings January 26, 1981

SARACCO,
*Appellant,*

*v.*

MULTNOMAH COUNTY,
*Respondent.*

(No. A7804-06899, CA 14869)

622 P2d 1118

Charles P. Duffy, Portland, argued the cause for appellant. With him on the briefs were Kenneth M. Elliott, Certified Law Student, and O'Donnell, Rhoades, Gerber & Sullivan, Portland.

Jack D. Hoffman, Deputy County Counsel, Portland, argued the cause for respondent. With him on the brief was John B. Leahy, County Counsel, Portland.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

The issue on this appeal from a summary judgment for defendant is whether defendant, as a public body, is immune from tort liability by virtue of the discretionary act exception provided in ORS 30.265(3)(c).[1] Because we conclude that it is not, we reverse and remand for further proceedings.[2]

Plaintiff filed this action for personal injuries and property damage alleged to have resulted when plaintiff's automobile left the roadway and collided with a portion of the Hawthorne Bridge owned and maintained by the defendant County. It is further alleged that the proximate cause of the accident was the negligence of defendant in, among other things, failing to inspect and maintain the bridge so as to discover and alleviate the slick and wet condition of the bridge; failing to repair the surface of the bridge which was in a worn condition, resulting in a slippery surface; failing to recognize the defects and dangerous condition of the bridge due to normal wear and tear and taking actions to cure said defects and dangerous conditions, and failing to keep the bridge in a state of good repair by allowing the steel grating to become worn and slippery.

Defendant's answer, among other things, set forth an affirmative defense which alleges that "the design, construction and maintenance of the Hawthorne Bridge including the roadway is a discretionary act for which defendant Multnomah County is immune from liability." Its subsequent motion for summary judgment contended that there was no genuine issue as to the material facts as to whether the defendant, as a public body, is immune from liability.

---

[1] ORS 30.265(3)(c) provides:

"(3) Every public body and its officers, employes and agents acting within the scope of their employment or duties are immune from liability for:

"* * * * *

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

[2] At the time this case was argued, our decision in *Stevenson v. State of Oregon,* 42 Or App 747, 601 P2d 854 (1979), was pending on review in the Supreme Court. We held this case to abide the Supreme Court's decision in that case.

In support of its motion, defendant submitted several affidavits, which may be summarized as follows: The Hawthorne Bridge was built in 1910 with a conventional wooden deck, which in 1931 was redecked with a wood and blacktop pavement deck. In 1944, Irving steel grating replaced the former deck because of its nonskid qualities, and because it obviated snow removal problems. In 1961, Nelson nonskid studs were welded to the steel grating on the bridge to improve traction; since that time, approximately 500,000 steel studs have been welded onto the deck. The steel studs permanently alter the surface of the steel deck, and are never replaced, although new studs are continually being welded on to the deck grating. One affidavit, by a structural engineer for the County, states that the affiant designed a pattern for the installation and welding of the steel studs, and that the studs were chosen because installing them was the best and simplest way to increase traction on the bridge deck.

The affidavit of the County Engineer, who is responsible for all engineering services in the county, states that he has participated in frequent discussions during budget time concerning replacing the Hawthorne Bridge's steel deck. The affidavit describes two types of improvements under consideration which would replace the steel grate deck presently in existence, and goes on to state that because of budgetary constraints, he has assigned a low priority to replacing the grating with a different surface. He states further that, in his opinion, the most economical and efficient method of improving traction on the bridge deck surface is to continue "the alteration of the design of the deck surface by continuing to weld the steel studs onto it." He concludes with the statement that the welding of steel studs onto the deck is not for the purpose of maintaining the deck surface, but rather to modify and improve skid resistance instead of replacing the deck surface as mentioned above.

In opposition to defendant's affidavits summarized above, plaintiff filed the deposition of one of the affiants, the County bridge maintenance supervisor, who is responsible for the operation and maintenance of all county bridges. He testified that the studs wear down with time,

and that when that occurs other studs are welded on the grate to maintain skid resistance. He testified that the bridge was inspected yearly, but he also said that new studs were installed when it is necessary to replace worn studs, and that new studs were added more than once a year in different areas. Maintenance records indicated that studs were last replaced on the West end of the bridge for east-bound traffic, in which the accident occurred, in January of 1976. The accident occurred on September 27, 1977, and the witness did not know whether the bridge had been inspected subsequent to the January, 1976, restudding but before the accident.

Defendant contends that, based on the foregoing facts, its decision to weld steel studs on the bridge grate to improve traction, and its continuing to do so, was and is a design function which, as a matter of law, is immune from tort liability as a discretionary act. *Smith v. Cooper,* 256 Or 485, 475 P2d 78, 45 ALR3d 857 (1970), and the decisions of this court in *Gallison v. City of Portland,* 37 Or App 145, 586 P2d 393 (1978), *rev den* (1979) and *Stevenson v. State of Oregon,* 42 Or App 747, 601 P2d 854 (1979), might tend to support that position. In *Gallison,* we held that the alleged failure of the city to properly shield a traffic light was a design function, and therefore fell within the discretionary immunity exception of the Tort Claims Act. In our decision in *Stevenson,*[3] we followed *Gallison* on substantially the same facts, and in both cases we relied on *Smith v. Cooper, supra.*

The Supreme Court granted review in *Stevenson,* and in reversing this court, stated:

"The decisions that make up planning and design of highways and their maintenance involve the exercise of two very different kinds of judgment. First, there is the exercise of what we may term governmental discretion or policy judgment. The decision to build a highway rather than a railroad track is such a decision. When a governmental body by its officers and employes makes that kind of decision the courts should not, without clear authorization, decide whether the proper policy has been adopted or

---

[3] *But see* specially concurring opinion. *Stevenson v. State of Oregon,* 42 Or App 747, 754, 601 P2d 854 (1979).

whether a given course of action will be effective in furthering that policy. This is the modern rationale for governmental immunity for discretionary acts. [Footnote omitted.] We have no doubt that when the legislature provided immunity for discretionary acts it intended to provide immunity for those kinds of decisions. * * *"

"* * * * *

"Like virtually every other activity, both planning and design, as well as maintenance of roads, frequently require the making of decisions which do not involve the making of public policy; for example, the decision whether to make a safety fence two feet rather than three feet high or the decision to first remove the snow from street A rather than from street B. These decisions involve the use of 'discretion' in the sense that a choice must be made but they do not involve the use of 'discretion' in the sense that a policy decision is required." *Stevenson v. State,* 290 Or 3 at 9-11, 619 P2d 247 (1980).

The court went on to point out that even though nonpolicy decisions may require technical expertise, that reason alone does not cloak them with immunity. After discussing the apparent reason for providing immunity for the negligence of public employes who are required to make nonpolicy decisions involving highly technical considerations, the court stated:

"When applying that provision, then, the inquiry is whether the function in question involves the exercise of what we have described as governmental or policy discretion. We are well aware that in stating this conclusion we do not provide a readily-applied method for deciding close cases. There are, of course, circumstances in which it is clear merely from a description of the decision in question that governmental discretion was necessarily involved. Examples are the decision to build a new highway or to initiate a new governmental program. In other situations, however, no determination about immunity will be possible until it is known how the particular decision was made.

"* * * * *

"Similar examples can be given in the area of what is normally considered to be road or highway maintenance. The appropriate agency might decide, for example, that its budget would permit the repaving of either of two sections of a highway but not both. The decision to repair one rather than the other would not be grounds for tort liability if made in the deliberate exercise of the agency's

authority to set such priorities. The discretionary function immunity would not, however, necessarily insulate the agency from liability for the negligent performance by its employes of certain tasks related to such a decision — for example, determining the extent of the actual disrepair in each section and the kinds of hazards that existed as a result." 290 Or at 14-15.

■   In the case before us, even if we assume that the decision in 1961 to install steel studs on the bridge to improve traction, and the subsequent decisions to continue to replace the steel studs rather than replace the entire steel grid road surface, were policy decisions which would not be grounds for tort liability, the alleged negligent performance by defendant's employes in failing to inspect, maintain and repair the steel grid surface, thereby rendering it slippery and dangerous, would not be policy decisions or discretionary acts immune from tort liability.

■   On the record made in support of, and in opposition to, the motion for summary judgment, we believe there is a genuine issue of a material fact as to whether the steel studs had become worn down necessitating the installation of new studs, albeit not exact replacements, in order to maintain the desired skid resistance. The fact that the decision as to when to replace studs, and where to place them on the grid, may require technical expertise does not render the decision immune.

The burden is on the defendant to establish its immunity, *Stevenson v. State of Oregon, supra,* 290 Or at 15, and we cannot say that it has done so on this record. As we have stated, even if the initial decision in 1961 to install the steel studs on the bridge was a policy decision cloaked with discretionary immunity, the maintenance or improvement of the steel stud design are not functions which, alone, are sufficient to establish immunity as a matter of law. Issues of fact remain as to whether defendant was negligent in one or more of the respects claimed by plaintiff.

Accordingly, defendant's motion for summary judgment ought not to have been granted.

Reversed and remanded for further proceedings.