Argued and submitted May 20, 1983, affirmed January 25, reconsideration denied June 29, petition for review allowed August 28, 1984
See 297 Or 643, 686 P2d 369 (1984)

# PENDERGRASS,
*Respondent,*

*v.*

# STATE OF OREGON and
# MOTOR VEHICLES DIVISION,
*Appellants.*

## (A8003-01190; CA A24279)

675 P2d 505

Virginia L. Linder, Assistant Attorney General, Salem, argued the cause for appellants. With her on the briefs were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

I. Franklin Hunsaker, Portland, argued the cause for respondent. With him on the brief were Ronald G. Stephenson, and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

Before Richardson, Presiding Judge, and Van Hoomisen and Newman, Judges.

RICHARDSON, P. J.

**RICHARDSON, P. J.**

The state appeals a judgment for plaintiff following a jury verdict in this wrongful death action. Plaintiff's decedent, while riding a bicycle, was struck and killed by a vehicle driven by Gary Robb. Robb had suffered an epileptic seizure and blacked out just prior to losing control of his vehicle and striking decedent. Robb's epileptic condition was known to the Motor Vehicle Division (MVD). Plaintiff's theory of liability was that the defendants were negligent in failing to suspend or prevent renewal of Robb's operator's license and that their negligence caused the decedent's death. The state assigns as error the giving of an instruction on negligence *per se* and the court's denial of a motion to strike two allegations of negligence.

The fatal accident occurred on October 1, 1978. At that time Robb had a current Oregon operator's license and had been licensed to drive since 1970. MVD had been aware since 1970 that he suffered from a seizure disorder, but pursuant to MVD evaluation procedures it was determined that he could be licensed to drive. In 1975 he was given a periodic reevaluation and received a medical clearance to retain his license. He was scheduled for a reevaluation in 1977.

In September, 1977, pursuant to MVD regulation, its Medical Reexam Unit sent Robb a letter requesting a certificate from his physician and his personal affidavit as to any seizures within the past two years. Initial evaluation of such medical data is done by the State Health Division, which makes a recommendation to MVD respecting the continued licensing of the driver. A copy of the letter to Robb was sent to the Health Division. The physician's certificate was completed and returned to the Health Division by Robb's physician. Robb's personal affidavit was not returned. The Health Division sent a letter and another affidavit to Robb in October, 1977. The letter advised him that the physician's certificate had been received and that any action on reevaluation would be withheld until the affidavit was received. A copy of the letter was sent to the MVD Medical Reexam Unit. Robb did not respond to that request either, and his file was not submitted to the Health Division for review.

The Health Division sent another reminder to Robb in November, 1977, but he did not respond. On January 4,

1978, still another reminder with an affidavit enclosed was sent to him with instructions to return the completed affidavit in two weeks. He did not return it.

Former OAR 735-31-035(9) provided, in essence, that failure to comply with the request for information within 45 days "will result in immediate suspension of the driver's license to operate a motor vehicle." Suspension proceedings were not commenced. Robb's file in MVD was "red stopped" on May 1, 1978. The "red stop" should have been entered in the MVD computer pursuant to internal procedures, and would have resulted in the Medical Reexam Unit being notified if a renewal of Robb's license had been applied for in one of the MVD field offices. The "red stop" was not entered in the computer and on May 8, 1978, Robb's license was renewed. On August 31, 1978, he received a duplicate license. The Medical Reexam Unit was not notified on either occasion. No action was taken by MVD on reevaluation of Robb's medical condition and proceedings to suspend his license were not commenced before the accident.

In essence, plaintiff's allegations were that MVD was negligent in failing to follow procedures mandated by statute and MVD regulations, resulting in failing to reevaluate Robb's qualifications to drive and in allowing him to obtain a renewed operator's license. The court instructed the jury:

> "In addition to common law negligence, there is also statutory negligence which consists of the violation of a statute, ordinance, administrative rule or a mandatory procedure intended for the safety or the protection of others. Violation of such a statute, ordinance, administrative rule or mandatory procedure constitutes negligence in and of itself if the person injured was a member of the class intended to be protected by the rule, unless you find from all the evidence that the State of Oregon, Motor Vehicles Division, was acting in a reasonably prudent manner under the circumstances."

Defendants excepted to the instruction:

> "I would take exception to the instruction which is patterned after the statutory negligence, which says, in effect, that a violation by an agency of one of its rules or regulations, particularly the one which has been received in evidence, could constitute negligence per se."

Plaintiff argues that we should not address the merits of the first assignment, because defendants did not adequately except to the instruction and its arguments on appeal contesting the instruction were not made in the trial court. ORCP 59H provides, in pertinent part:

"* * * [N]o instruction given to a jury shall be subject to review upon appeal unless its error, if any, was pointed out to the judge who gave it * * * [and] any point of exception shall be particularly stated * * *."

See *Roberts v. Mitchell Bros.*, 289 Or 119, 611 P2d 297 (1980). Defendants' exception expressed little more than a disagreement with the instruction without particularizing the basis of that disagreement. The exception did not preserve the extensive grounds now urged for the first time on appeal. We decline to review the merits of defendants' argument under this assignment.

In the second assignment, defendants contend that the court erred in not allowing its motion to strike the following specifications of negligence:

"g. Allowing seizure disorder drivers to automatically renew their motor vehicle licenses on anniversary dates without confirmation of their driving status through the Department of Motor Vehicles Medical and Re-Exam Unit.

"h. Failing to establish reasonable safeguards or impose reasonable guidelines to prevent seizure disorder drivers from automatically renewing their motor vehicle licenses on anniversary dates."

Defendants contend that those specifications allege "discretionary acts" that are immune from liabiity under ORS 30.265(3)(c). In *Stevenson v. State of Oregon,* 290 Or 3, 619 P2d 247 (1980), the court construed ORS 30.265(3)(c) to limit governmental tort immunity to decisions involving the exercise of policy judgment; the statute does not immunize decisions that simply implement or apply policy. The court also noted in *Stevenson:*

"* * * There are, of course, circumstances in which it is clear merely from a description of the decision in question that governmental discretion was necessarily involved. Examples are the decision to build a new highway or to initiate a new governmental program. In other situations, however, no

determination about immunity will be possible until it is known how the particular decision was made.

"* * * * *

"The burden is on the state to establish its immunity. In some instances, the nature of the function alone is sufficient to establish immunity. In other instances, evidence of how the decision was made is necessary. * * *" 290 Or at 14-15.

*See also Brasel v. CSD,* 56 Or App 559, 642 P2d 696 (1982).

Defendants argue:

"* * * Specification (g) permitted the jury to find defendants liable for allowing persons with seizure disorders automatically to renew their licenses without confirming their driving status with the medical reexam unit. Specification (h) permitted the jury to find defendants liable for not establishing a procedure to prevent seizure disordered drivers from renewing their licenses. Essentially then, the jury could find defendants liable for the decisions that the division has made regarding what procedures it follows in relicensing drivers if the jury was of the opinion a different procedure would be desirable.

"* * * * *

"* * * Subparagraph (g) pertains to whether an employe processing a renewal should have to somehow contact the medical reexam unit in every instance involving a seizure disordered driver. Subparagraph (h) pertains to whether the division had to promulgate procedural guidelines or safeguards to present seizure disordered drivers from automatically renewing their licenses. The jury was free to speculate about what other procedures could be fashioned and the desirability of implementing them, and the jury was permitted to find tort liability based on the division's lack of such procedures."

■ Defendants understand the challenged allegations as pertaining to the adequacy of MVD's *establishment* of procedures rather than to MVD's failure to follow the procedures it had established. Even accepting that understanding we do not agree that the establishment of the procedures was discretionary *as a matter of law.* The *basic* policy decision that the evidence showed MVD made was that field offices should be apprised of pending medical reevaluations and should in turn inform the Medical Reexam Unit of renewal applications by persons subject to medical reevaluation. The decision to

establish *specific* implementing procedures was not one about which it can be said "merely from a description of the decision * * * that governmental discretion was necessarily involved." *Stevenson v. State of Oregon, supra,* 290 Or at 14. Whether the establishment of the procedures was discretionary was a question of fact, and the burden of proof was defendants'. *See Brasel v. CSD, supra.* Defendants' motion to strike was made before trial and was renewed at the conclusion of plaintiff's case-in-chief. The motion was made on the ground that on their face and as a matter of law the allegations relate to immune discretionary acts. The trial court did not err by denying the motion.

Affirmed.