Argued and submitted December 2, 1983, affirmed March 21, reconsideration denied May 11, petition for review denied May 30, 1984 (297 Or 228)

ANN HENDRICKS,
*Appellant,*

*v.*

STATE OF OREGON,
*Respondent.*

(130-205; CA A28300)

678 P2d 759

Cynthia L. Barrett, Portland, argued the cause for appellant. With her on the briefs was Charles Paulson, Portland.

Michael D. Reynolds, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer,

Attorney General, James E. Mountain, Jr., Solicitor General, and Helen M. Rockett, Assistant Attorney General.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Plaintiff brought this action under the Tort Claims Act, ORS 30.260 *et seq.,* seeking recovery for personal injuries sustained when she was raped and assaulted by Dwain Little, a convicted murderer, while Little was on parole. She appeals from a summary judgment for defendant. We affirm.

The complaint alleged, and we accept as true, the following facts. In November, 1964, Little sexually assaulted and murdered a young girl. He was convicted of murder in the first degree and sentenced to life imprisonment. In July, 1974, the State Board of Parole granted him parole; 10 months later, the parole was revoked after he was convicted of a weapons offense, and he was returned to prison. On April 26, 1977, the board again paroled him. On June 2, 1980, he kidnapped, raped and stabbed plaintiff, severely lacerated her right wrist and left ankle and left her for dead; he was subsequently convicted of that rape and assault.

Plaintiff alleged negligence of the board in both parole decisions:

"(1)   In negligently releasing Little when they knew, or in the exercise of reasonable care should have known, that Little was a dangerous psychotic with homicidal tendencies who had killed at least once in the past and thereby did negligently expose members of the general public to death or serious injury, and thereby did proximately cause the injuries sustained by plaintiff.

"(2)   In failing to provide or require adequate and proper treatment for the mental condition of said Little.

"(3)   In failing to make a complete and thorough examination of records pertaining to the mental condition of Little.

"(4)   In failing to give proper weight and credence to the records that were examined.

"(5)   In failing to give proper weight or credence to the warnings given to them by the Oregon State Police.

"(6)   In generally failing to exercise reasonable care in connection with the care, treatment, custody and release of Little."

Defendant moved for summary judgment on the ground that, under ORS 30.265(3)(c), the state is immune

from any liability arising from the board's decisions in releasing Little. The trial court granted that motion, and plaintiff appeals.

ORS 30.265 provides, in pertinent part:

"(3) Every public body and its officers, employes and agents acting within the scope of their employment or duties, * * * are immune from liability for:

"* * * * *

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

The question presented is whether determining to release Little constitutes a "discretionary function" not capable of creating liability. We conclude that the board performed a discretionary function in paroling Little and that, therefore, the state is immune from liability.

■ ORS 30.265(3)(c) extends governmental tort immunity only to actions involving the exercise of policy judgment; it does not immunize decisions that simply implement or apply policy. *Stevenson v. State of Oregon,* 290 Or 3, 619 P2d 247 (1980); *Pendergrass v. State,* 66 Or App 607, 675 P2d 505 (1984). In some instances, a description of the decision in question is sufficient to establish that the exercise of governmental policy was necessarily involved; in others evidence of how the decision was made is necessary to demonstrate that the decision was one involving the making of policy. *Stevenson v. State of Oregon, supra,* 290 Or at 14; *Jarrett v. Wills,* 235 Or 51, 53, 383 P2d 995 (1963). Plaintiff contends that this case is one of the latter and that the state here failed to meet its evidentiary burden and, therefore, is not entitled to summary judgment.

■ The nature of the underlying decision by the board—whether to release Little on parole—necessarily involved the exercise of discretion. When he was paroled in 1974 and again in 1977, the decision was solely within the discretion of the board.[1] Although the basic policy on parole was set out by statute, the final release decision was left to the discretion of the board under the existing statutory scheme, which also

---

[1] The same statutes were in effect at the time both parole decisions were made.

granted the board discretion in considering certain factors in making the decision:

"In making its determination regarding a prisoner's release on parole, the State Board of Parole *may* take into account each of the following factors:

"(1) The prisoner's personality, including his maturity, stability, sense of responsibility and any apparent development in his personality which may promote or hinder his conformity to law;

"(2) The adequacy of the prisoner's parole plan;

"(3) The prisoner's ability and readiness to assume obligations and undertake responsibilities;

"(4) The prisoner's intelligence and training;

"(5) The prisoner's family status and whether he has relatives who display an interest in him, or whether he has other close and constructive associations in the community;

"(6) The prisoner's employment history, his occupational skills, and the stability of his past employment;

"(7) The type of residence, neighborhood or community in which the prisoner plans to live;

"(8) The prisoner's past use of narcotics or dangerous drugs, or past habitual and excessive use of alcoholic liquor;

"(9) The prisoner's mental or physical makeup, including any disability or handicap which may affect his conformity to law;

"(10) The prisoner's prior criminal record, including the nature and circumstances, recency, frequency and type of previous offenses;

"(11) The prisoner's attitude toward law and authority;

"(12) The prisoner's conduct in the institution, including particularly whether he has taken advantage of the opportunities for self-improvement afforded by the institutional program, whether he has been disciplined for misconduct prior to his hearing or reconsideration for parole release, whether he has forfeited any reductions of term during his period of imprisonment, and whether the reductions have been restored at the time of hearing or reconsideration; and

"(13) The prisoner's conduct and attitude during any previous experience of probation or parole and when the experience occurred." *Former* ORS 144.180 (*repealed by* Or Laws 1977, ch 372, § 18.) (Emphasis supplied.)

Administrative rules in effect at the time of both paroles merely established procedures and evidentiary rules for hearings; they provided no guidelines or constraints relating to the decision.[2] The applicable standards were those established by the then existing statutes, which permitted parole decisions to be made in a largely unstructured manner. The discretion accorded the board under that system was comparable to that of the superintendent of Fairview Home in *Jarrett v. Wills, supra.* In that case, the plaintiff brought a claim against the superintendent, alleging negligence in releasing an inmate who subsequently assaulted and injured her. The court concluded that the applicable statute and rules vested broad discretionary powers in the superintendent and that his decision to release the inmate was a discretionary function immune from liability:

"[The superintendent's] responsibilities require him to make constant discretionary judgment. Like the Board of Parole and Probation or the Superintendent of the State Hospital, he is required * * * to judge and govern human beings and human conduct; a judgment devoid of any of the standard of weights and measures available for the decisions made by other public officials. There would be few of his decisions that would not be discretionary. And it is as certain as human existence that he will make mistakes. Because of this it is unthinkable that he should be, individually, or that the state because of him, should be held liable for a mistake not dictated by an unlawful purpose. And this would be so whether his conduct is measured by a rule based on 'discretionary conduct' or upon public policy. * * *" 235 Or at 56.

Although *Jarrett* was decided before the effective date of the Tort Claims Act, the same rationale applies here. In making individualized parole determinations, without reference to formal criteria, the board necessarily exercised policy judgments; from the description of the decision alone we conclude that the board's exercise of that judgment in releasing Little was a discretionary function for which the legislature intended tort immunity under ORS 30.265(3)(c). *Stevenson v. State of Oregon, supra; Jarrett v. Wills, supra.*

Affirmed.

---

[2] Plaintiff's only challenge is to the board's application of statutory standards regarding the release of Little; the present parole matrix system was not applicable to him. We express no opinion as to whether the state enjoys immunity for its actions in releasing a dangerous person under the matrix system.