Argued and submitted January 9, affirmed June 27, reconsideration denied August 31, petition for review denied October 2, 1984 (298 Or 37)

## SAGER,
*Appellant - Cross-Respondent,*

*v.*

## CITY OF PORTLAND,
*Respondent - Cross-Appellant,*

## CITY OF PORTLAND,
*Third Party Plaintiff -*
*Cross-Appellant - Cross-Respondent,*

*v.*

## WILKINSON et al,
*Third Party Defendants -*
*Cross-Respondents - Cross-Appellants.*

(A8010-05790; CA A26166)

684 P2d 600

Amy Levinson, Milwaukie, argued the cause and filed the briefs for appellant.

Rhona Wolfe Friedman, Deputy City Attorney, Portland, argued the cause and filed the briefs for respondent-cross-appellant.

Hugh G. Grady, Portland, argued the cause for cross-respondents David A. Wilkinson and Mary T. Wilkinson.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

In this negligence action, plaintiff assigns as error a trial court order denying her motion to strike defendant City of Portland's (City) discretionary immunity affirmative defense and the granting of a directed verdict in favor of the City. The City cross-appeals. It contends that the trial court erred in dismissing its cross-claim against defendants Wilkinson. Defendants Wilkinson also cross-appeal. They contend that the trial court erred in dismissing their cross-claim against the City.

Plaintiff was injured when she tripped and fell on a defective sidewalk. She brought this action against the City, which filed a third party complaint against the Wilkinsons, owners of the property abutting the sidewalk, for contribution and indemnity. ORCP 22C. Plaintiff then added the Wilkinsons as defendants. The Wilkinsons cross-claimed against the City for contribution and indemnity. Both cross-claims were dismissed. The trial court directed a verdict for the City, stating:

> "THE COURT: Here's my decision. Both these motions are the same. They're just different sides. I'm letting the City out at this point. The reason for that is that there is no evidence in the record that the City improperly conducted any inspection that it undertook. I spoke at the start of trial as to whether with the evidence that the inspectors were out at a time that arguably this defect was a hazard, and they walked by it and didn't notice it, that would be actionable negligence. That would be improper performance of administerial [sic] function.

> "* * * * *

> "THE COURT: The action that I see, whether they— whether the City decides to inspect these every two years, every five years, or every ten years is one of policy that the City has to make in deciding whether they can spend this money inspecting sidewalks or whether they're going to spend the money on police service, and if the City could undertake a program of posting public notices, an advertising, or public relations program and completely do away with the inspectors, and it might very well be a good policy. This program has to cost them close to $100,000 a year to walk around and inspect our sidewalks. It might be a better policy to have public information on it and let people in their own neighborhoods do the inspecting and do the reporting, and then the

City just send out the violation notices, and if the conditions aren't corrected, then do the corrections themselves. The City could do any one of these things as a policy matter and be immune from liability. If they do undertake something and they do it negligently, then they're responsible. There's not one piece of evidence that I see in the record that they did anything that they undertook to do in a negligent manner."

Plaintiff's claim against the Wilkinsons was dismissed after a settlement.

■ We first consider whether the trial court erred in directing a verdict for the City.[1] We view the evidence in the light most favorable to plaintiff and give her the benefit of every favorable inference that may be drawn therefrom. *Holmes v. Oregon Assn Credit Mgmt.,* 52 Or App 551, 559, 628 P2d 1264 (1981). Plaintiff alleges that the City's charter and ordinances, as well as the common law, recognize the City's duty to inspect its sidewalks and to notify the abutting owners of any defects so that repairs may be made.[2] No notification was given here. The City's employes testified that it was the City's goal to inspect sidewalks every five years, but that, due

---

[1] We find no merit in plaintiff's contention that the trial court erred in denying plaintiff's motion to strike the City's defense of governmental immunity.

[2] Charter sections 9-507 and 9-508 provide in relevant part:

"It is the duty of all owners of land abutting any street in the city to construct, reconstruct and maintain in good repair the adjoining sidewalks. If the owner of any parcel of land allows an adjoining sidewalk to be out of repair, the city engineer shall post notice on the property directing the owner, agent or occupant thereof immediately to repair it in accordance with city specifications." Section 9-507.

"Owners of land within the city are liable for all damages resulting from their failure to put an adjoining sidewalk in repair after notice to repair as provided in this article. No action shall be maintained against the city by or for any person injured because of any sidewalk defect." Section 9-508.

City Ordinances provide in relevant part:

"Sidewalks shall be the responsibility of the owners of the property abutting the same to the full extent set forth in the City Charter." Section 17.28.020.

"After a sidewalk has been improved or curb constructed, or both, the owner of land abutting such street area shall maintain such sidewalk and curb in good repair. If the city engineer finds that any sidewalk or curb needs repair, he shall post a notice on the adjacent property, headed 'Notice to Repair Sidewalk' (or Curb) which shall in legible characters direct the owner, agent or occupant of the property immediately to repair the sidewalk or curb, or both, in a good and substantial manner in accordance with the plans, specifications and regulations of the city." Section 17.28.070.

to budgetary constraints and other reasons, it had not done so. There was evidence that the sidewalk that plaintiff tripped on had not been inspected for seven or eight years. Plaintiff argues that the City's failure to inspect and notify is actionable negligence.

■ As noted above, the trial court ruled that plaintiff had failed to prove that the City was negligent because no evidence was presented indicating that the City "improperly conducted any inspection that it undertook"[3] and that the City could not be liable in any event because the timing of the inspections, which involve questions of availability of funding and ordering of priorities, is a discretionary function. ORS 30.265(3)(c).

■ A determination whether governmental immunity bars a claim is a question of law, as is a determination whether a duty exists in a given case. *Yanzick v. Tawney,* 44 Or App 59, 62, 605 P2d 297, *rev den* 288 Or 667 (1980); *Weaver v. Lane County,* 10 Or App 281, 289, 499 P2d 1351 (1972). It is clear here that the City had a duty to inspect its sidewalks. *See Noonan v. City of Portland,* 161 Or 213, 88 P2d 808 (1939). It does not necessarily follow, however, that every breach of a duty results in liability. ORS 30.265 provides in relevant part:

"(3) Every public body and its officers, employes and agents acting within the scope of their employment or duties, or while operating a motor vehicle in a ridesharing arrangement authorized under ORS 276.598, are immune from liability for:

"* * * * *

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

The question is whether the failure to inspect the sidewalk here was a ministerial, as opposed to a discretionary function. In *Noonan v. City of Portland, supra,* 161 Or at 237, the

[3] It is unclear from the record whether the trial court found this to be an alternative ground for directing a verdict or merely was restating that the decision to inspect is a discretionary act. Plaintiff does not allege that the City was actively negligent, but, rather, that it failed to inspect within a reasonable time. To the extent that the trial court relied on the above finding to direct a verdict, that reliance is unfounded. Negligence may be predicated either upon a negligent act or a negligent failure to act.

Supreme Court held that the maintenance of sidewalks is a ministerial function. That does not mean, however, that the decision to inspect the sidewalks is, *ipso facto,* a ministerial act, although the actual performance of the inspection may be.

In *Stevenson v. State,* 290 Or 3, 10, 619 P2d 247 (1980), the Supreme Court analyzed what may be considered "governmental discretion or policy judgment."

> "* * * The decision to build a highway rather than a railroad track is such a decision. When a governmental body by its officers and employes makes that kind of decision the courts should not, without clear authorization, decide whether the proper policy has been adopted or whether a given course of action will be effective in furthering that policy. This is the modern rationale for governmental immunity for discretionary acts. [Footnote omitted.] We have no doubt that when the legislature provided immunity for discretionary acts it intended to provide immunity for those kinds of decision. * * *
>
> "* * * * *
>
> "Like virtually every other activity, both planning and design, as well as maintenance of roads, frequently require the making of decisions which do not involve the making of public policy; for example, the decision whether to make a safety fence two feet rather than three feet high or the decision to first remove the snow from street A rather than from street B. These decisions involve the use of 'discretion' in the sense that a choice must be made but they do not involve the use of 'discretion' in the sense that a policy decision is required."

*See Smith v. Cooper,* 256 Or 485, 475 P2d 78 (1970); *see also Daugherty v. State Highway Comm.,* 270 Or 144, 526 P2d 1005 (1974); *Saracco v. Multnomah County,* 50 Or App 145, 622 P2d 1118 (1981); *compare Disney-Marine Co., Inc. v. Webb,* 47 Or App 985, 615 P2d 1125 (1980).

We addressed this issue in *Moody v. Lane County,* 36 Or App 231, 584 P2d 335 (1981), which was a wrongful death action. There the county had identified a hazardous condition at the intersection where plaintiff's decedent was killed in an automobile accident and had authorized minor changes in the traffic flow. Plaintiff alleged that the county unreasonably delayed making the authorized changes and that the delay proximately caused the accident. The trial court granted defendant's demurrer, and plaintiff appealed. We reversed and remanded, because the allegations in the pleadings were

not specific enough for us to determine whether the county's actions were discretionary. We stated, however:

> "The discretionary act exception to the general waiver of governmental immunity contained in the Tort Claims Act is intended to preclude judicial review of certain political decisions which are expressly committed to other branches of government. *The exception protects governmental decisions which involve public policy considerations such as the availability of funds, public acceptance and order of priorities. Smith v. Cooper,* 256 Or 485, 506, 475 P2d 78, 45 ALR3d 857 (1970). * * *

> "Application of the discretionary act exception in a manner consistent with its underlying doctrine requires examination of the nature of the government action upon which plaintiff's claim is based. If adjudication of the claim necessarily involves judicial second-guessing of a public policy based decision made by another branch of government, then immunity attaches. Conversely, if the claim does not involve judicial review of such a governmental decision, then the discretionary act exception does not apply even though defendant's conduct may involve judgment of a nongovernmental nature. * * *

> "* * * * *

> "* * * Based upon these allegations, the conduct involved may ultimately be shown to be either discretionary or ministerial. The pleadings allow inferences of either type of conduct. For example, the County's delay in implementing authorized changes in traffic control at the intersection may have flowed from an administrative or legislative determination of priorities with respect to the allocation of personnel, materials, and funds. If so, the County's conduct in failing to change the design is, like the initial highway design, an immune discretionary act. *Smith v. Cooper,* 256 Or at 511." 36 Or App at 233-35. (Emphasis supplied.)

■     The facts here indicate that the City intended to inspect its sidewalks every five years. Three full-time inspectors were employed. The number of inspectors was governed by budgetary considerations. The inspectors discussed necessary repairs with property owners and determined whether repairs had been properly made. One of the City's supervisors testified that the five-year schedule was affected by the limited number of inspectors, weather, sick leave, citizens' complaints and other inspections. The five-year term was

primarily based on the growth of tree roots, a major cause of sidewalk defects.

The City relies on the fact that the timing of sidewalk inspections necessarily entails a balancing of competing priorities. One employe testified that the sidewalk inspection program "has been a struggle with [the City] Council every year." *See Moody v. Lane County, supra.* We think the City's contention is correct. Its decision involves a determination of priorities regarding allocation of personnel, materials and funds. Municipalities with fixed budgets must always struggle to allocate limited resources appropriately, and we are constrained against finding that the legislature intended to impose liability in such circumstances.

We conclude that the failure of the City to inspect and repair its sidewalks is a discretionary act and immune from liability. This case involves a governmental decision which is more akin to a decision about whether to "build a highway rather than a railroad track," than it is a decision to "make a safety fence two feet rather than three feet high." *Stevenson v. State, supra,* 290 Or at 4.[4] The decision when to inspect is the sort of public policy matter to which immunity from liability under ORS 30.265(3)(c) is directed. Accordingly, the directed verdict for defendant was correct.

Our holding that the City is immune from liability renders it unnecessary to address the other issues raised by this appeal. The City cannot be sued by plaintiff for its negligence. Therefore, defendants Wilkinson are likewise barred from an action, and their cross-claim was properly dismissed. Similarly, the City's cross-claim against defendants Wilkinson was properly dismissed, for there can be no damage award against it upon which to predicate either contribution

---

[4] In *Stevenson v. State,* 290 Or 3, 15, 619 P2d 247 (1980), the court noted:

"Similar examples can be given in the area of what is normally considered to be road or highway maintenance. The appropriate agency might decide, for example, that its budget would permit the repaving of either of two sections of a highway but not both. The decision to repair one rather than the other would not be grounds for tort liability if made in the deliberate exercise of the agency's authority to set such priorities. The discretionary function immunity would not, however, necessarily insulate the agency from liability for the negligent performance by its employes of certain tasks related to such a decision—for example, determining the extent of the actual disrepair in each section and the kinds of hazards that existed as a result."

or indemnity. Further, plaintiff's claim against the Wilkinsons has been settled. That settlement, coupled with our decision that the City is immune from liability, renders moot the question whether, under City Charter § 9-508, notice of the defect from the City was a condition precedent to the landowner's liability.

Affirmed.