Argued and submitted June 3, decision of Court of Appeals reversed; judgment of
circuit court reversed and case remanded to circuit court for further proceedings
December 18, 2008

Gregory A. HUGHES
and Laurie Ann Hughes,
*Petitioners on Review,*

*v.*

Keith L. WILSON
and Wasco County Public Works Department,
*Defendants,*

*and*

WASCO COUNTY,
*Respondent on Review.*

(CC 0500174CC; CA A132266; SC S055326)

199 P3d 305

Dean Heiling, Heiling Dwyer & Associates, Portland, argued the cause and filed the brief for petitioners on review. With him on the brief was Don S. Willner, Portland.

Stan LeGore, Miller & Wagner, LLP, Portland, argued the cause and filed the brief for respondent on review.

W. Eugene Hallman, Hallman & Dretke, Pendleton, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Linda Wicks, Assistant Attorney General, Salem, filed a brief on behalf of *amicus curiae* State of Oregon. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

WALTERS, J.

## WALTERS, J.

In this case, we consider a county's claim of immunity from civil liability under ORS 30.265(3)(c), Oregon's discretionary immunity statute.

Plaintiff Hughes was driving his motorcycle on Cherry Heights Road, a county road in Wasco County, when defendant Wilson drove out of a private driveway and the two vehicles collided. Plaintiff[1] brought a personal injury action against Wilson, alleging that Wilson was at fault in entering the road from a point where visibility of approaching traffic was obstructed,[2] and against Wasco County (county), alleging that a bush on the unpaved portion of the county road obscured motorists' vision, causing plaintiff's injuries.

In the trial court, the county moved for summary judgment under ORS 30.265(3), which provides public bodies with immunity from liability arising out of certain kinds of discretionary decisions. The county proffered evidence that it had delegated authority to make policy decisions regarding maintenance of county roads to its Director of Public Works, Boldt. Boldt submitted an affidavit stating that he had adopted a policy "for brush cutting"; that that policy was "established and in force prior to the motor vehicle accident which forms the basis for the present lawsuit"; and that it was "formulated through a balancing of the needs of the County, the available resources, and public safety." The county argued that the uncontested evidence established that Boldt had made a policy-level choice not to check or maintain vision clearance for private driveways unless private landowners gave notice of an impairment to vision. The county asserted that that choice was a discretionary function and, therefore, that the county was immune from liability under ORS 30.265(3)(c).

Plaintiff opposed the county's motion and characterized the evidence and the law differently. Plaintiff submitted

---

[1] Hughes's wife is also a plaintiff in the action, bringing a claim for loss of consortium. Her claims do not present separate issues; therefore, for simplicity, we will discuss the case as one brought by Hughes alone.

[2] Plaintiff also alleged that Wilson was at fault in failing to keep a proper lookout, failing to keep his vehicle under reasonable control, and failing to yield the right-of-way to plaintiff.

deposition excerpts stating that the county's policy had not been set out in writing and that the county had not communicated it to county officials, county employees, or private landowners. Therefore, plaintiff argued, that policy should not be given effect. Further, plaintiff contended, the county's policy amounted to a decision not to fulfill the county's duties to inspect and maintain its roads and a decision not to exercise care is not entitled to immunity under ORS 30.265(3)(c).

The trial court granted the county's motion and entered a general judgment dismissing plaintiff's complaint.[3] The Court of Appeals affirmed the decision of the trial court without opinion. *Hughes v. Wilson*, 213 Or App 588, 162 P3d 1095 (2007). We allowed plaintiff's petition for review and now reverse the decision of the Court of Appeals and remand the case to the trial court for further proceedings.

We begin our analysis with the text of ORS 30.265, which provides, in part:

"(1)   Subject to the limitations of ORS 30.260 to 30.300, every public body is subject to action or suit for its torts and those of its officers, employees and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function or while operating a motor vehicle in a ridesharing arrangement authorized under ORS 276.598.

"* * * * *

"(3)   Every public body and its officers, employees and agents acting within the scope of their employment or duties * * * are immune from liability for:

"* * * * *

"(c)   Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

Tensions inherent in the text of that statute have defied easy resolution. Section (1) of ORS 30.265 makes public bodies liable for their torts. Paragraph (3)(c) grants those

---

[3] The trial court granted the county's motion for summary judgment and entered a limited judgment in favor of the county. Plaintiff and Wilson stipulated to entry of a limited judgment in favor of Wilson, and the trial court then entered a general judgment dismissing plaintiff's complaint.

entities immunity from claims based upon a "discretionary function or duty." In fact, however, whenever a governmental employee determines facts and acts accordingly, that employee makes a number of choices and thereby exercises discretion. Yet, the law often imposes limits on those choices and recognizes that acts in violation of those limits may give rise to liability.[4]

■        Recognizing those tensions, this court has explained that the legislature used the words "discretionary function or duty" to exempt governmental entities from liability only for "certain types of decisions, namely, those that require supervisors or policy makers to assess costs and benefits, and to make a choice among competing goals and priorities." *Vokoun v. City of Lake Oswego*, 335 Or 19, 31, 56 P3d 396 (2002) (citing *McBride v. Magnuson*, 282 Or 433, 437, 578 P2d 1259 (1978)). *Accord Mosley v. Portland School Dist. No. 1J*, 315 Or 85, 89, 843 P2d 415 (1992). This court also has explained that, if the law requires a government to exercise due care, then ORS 30.265 does not immunize its decision not to exercise care at all. When a public body owes a duty of care, that body has discretion in choosing the means by which it carries out that duty. *Little v. Wimmer*, 303 Or 580, 589, 739 P2d 564 (1987); *Miller v. Grants Pass Irr. Dist.*, 297 Or 312, 320, 686 P2d 324 (1984). But "[t]he range of permissible choices does not * * * include the choice of not exercising care." *Mosley*, 315 Or at 92.

On review to this court, the county bases its defense of discretionary immunity on what it characterizes as a policy-level choice of means to fulfill its road maintenance duties. To analyze that defense, we first examine the nature of the county's road maintenance duties.

---

[4] The pairing of the terms "discretionary" and "duty" is particularly paradoxical. Whereas choice is intrinsic to discretion, duty ordinarily implies a legally dictated course of action. A former member of this court expressed his befuddlement as to how a duty can ever be discretionary. *See Miller v. Grants Pass Irr. Dist.*, 297 Or 312, 324, 686 P2d 332 (1984) (Lent, J., concurring):

"[A] discretionary function is one concerning which the governmental agency involved has power to make a choice among valid alternatives, but if there is a duty imposed by law there is no choice but to obey. If there is no duty, to which adherence is required, then the agency is concerned with a function rather than a duty. I really don't know what a discretionary duty looks like."

■ The common law imposes a general, nondiscretionary duty on landowners to make their property reasonably safe for their invitees. Accordingly, public landowners must make public property reasonably safe for members of the public who use the property in a manner that is consistent with its public purpose. *See Woolston v. Wells*, 297 Or 548, 557-58, 687 P2d 144 (1984) (possessor of land has a duty to use reasonable care to make land safe for invitees); *Taylor v. Baker*, 279 Or 139, 146, 566 P2d 884 (1977) (invitees include members of the public on land for purpose for which land is open to public). As this court has stated, the duty to make property reasonably safe includes a duty to inspect the property for conditions that create an unreasonable risk of harm:

> "In general, it is the duty of the possessor of land to make the premises reasonably safe for the invitee's visit. The possessor must exercise the standard of care above stated to discover conditions of the premises that create an unreasonable risk of harm to the invitee. The possessor must exercise that standard of care either to eliminate the condition creating that risk or to warn any foreseeable invitee of the risk so as to enable the invitee to avoid the harm."

*Woolston*, 297 Or at 557-58.

■■ The legislature has assigned county road maintenance responsibilities to county governing bodies and road officials, ORS 368.001,[5] and, in doing so, has evidenced an intent that accords with the common law. By assigning local governments the responsibility to carry out road-maintenance functions, the legislature intends that those governments will fulfill their common-law responsibilities and make travel on their roads reasonably safe for the general public. *See Little*, 303 Or at 589 (stating principle based on state highway statutes). A county's responsibility for road

---

[5] ORS 368.046(2) provides that a county road official shall work under the direction of the county governing body and shall:

"(a) Assist the county governing body in preparing specifications for county work to be done on any road within the county;

"(b) Superintend work done by the county upon roads within the county, whether the work is done under contract or otherwise;

"(c) Recommend to the county governing body methods to be adopted for the construction, improvement, repair and maintenance of roads; and

"(d) Perform other duties assigned by the county governing body."

maintenance extends not only to the paved portion of county roads, but also to county rights-of-way in their entirety. ORS 368.001(1) defines "county road" as "a public *road* under the jurisdiction of a county that has been designated as a county road" (emphasis added), and ORS 368.001(6) defines a "road" as *"the entire right of way* of any public or private way that provides ingress to or egress from property by means of vehicles or other means or that provides travel between places by means of vehicles." (Emphasis added.)

In this case, therefore, the county had a general common-law duty to inspect its roads, including the unpaved portions of those rights-of-way, and to maintain those roads, in their entirety, in a reasonably safe condition for the benefit of the traveling public.[6]

The next step in our analysis is to examine the policy-level decision which the county asserts to render it immune from liability for plaintiff's claim.[7] Plaintiff, in his complaint, alleged that the county was negligent in its execution of its road-maintenance duties because it had allowed a bush that obscured the vision of motorists to grow on the unpaved portion of Cherry Heights Road, had failed to remove the bush, and had failed to warn motorists of the obstructed vision. As an affirmative defense to plaintiff's claim, the county alleged that its "program for the removal of shrubbery from and adjacent to the roadway system in Wasco County and the execution thereof" entitled it to discretionary

---

[6] The county does not disavow those common-law duties. In fact, the policy on which the county relies for its claim of immunity recognizes and purports to address the county's obligation to inspect and maintain its roads. Boldt stated in his deposition that part of his department's responsibility was to keep brush off county roads when it could be a safety hazard, and in his affidavit he stated that "[r]oad projects that must be provided include maintenance of the County roads." Boldt also stated in his affidavit that maintenance of county roads includes "maintaining and replacing signs *along* all 700 miles of County roads, and maintaining drainage ditches and culverts *along* all County roads for the safety of all who use the County roads," and that *"[p]art of maintaining the shoulders* includes cutting brush that impairs visibility for vehicles that are driving on the County roads." (Emphasis added.) In addition, the county also submitted Boldt's job description, which requires that Boldt "cause[ ] to be * * * kept in good repair all County roads," and which provides that Boldt's duties may entail "cleaning *road shoulders*." (Emphasis added.)

[7] Plaintiff does not contend that Boldt lacked the requisite authority to set county policy. Thus, there is no issue in that regard.

immunity. In support of its motion for summary judgment, the county submitted the Boldt affidavit, which described the policies and general practices that the county had established as follows:

"a.   Vision clearance shall be maintained for all vehicles driving on County roads such that drivers in the actual driving lanes on a County roadway shall have an unobstructed view of both lanes of traffic on the County roads;

"b.   Every County road shall be inspected at least once a year for vision clearance and any brush shall be removed that impairs the vision of both lanes of traffic on the County road for any vehicle in either lane of the County road; and,

"c.   Because the County does not have sufficient time to inspect vision clearance for private driveways which enter upon County roads, the County relies on private landowners to remove the brush or to notify the County that the vision from a private driveway is impaired by brush, and the County shall clear that brush as necessary."

Boldt also averred that the county had acted consistently with that policy in not removing the bush in question. Thus, the "discretionary function or duty" on which the county bases its claim of immunity is the county's establishment of— and the county's action or nonaction in accordance with— those policies and practices.[8]

The county's policy provided that the county *would* inspect its roads and remove brush in two circumstances. Paragraph "b" provided that the county would inspect its roads at least once a year for vision clearance and would remove brush that impaired the "vision of both lanes of traffic on the County road." Paragraph "c" provided that the county would not inspect vision clearance for private driveways, but that, when private landowners notified the county that the vision from a private driveway was impaired by brush, the county would clear that brush.

---

[8] For simplicity, we discuss the county's discretionary immunity defense as a defense based on the county's "policy." But we do not imply that, to be entitled to immunity, a government's policy-level decision must be formally adopted. *See, e.g., Garrison v. Deschutes County*, 334 Or 264, 268-69, 48 P3d 807 (2002) (immunity based on decision-makers' "debate"); *Mosley*, 315 Or at 92 (immunity based on principal's decision).

In this case, the bush that allegedly obstructed the view of motorists did not satisfy either of the two removal criteria that the policy had specified. The bush was located on the unpaved portion of the road and did not extend into, or obscure motorists' vision of, the lanes of traffic; therefore, it was not subject to removal under paragraph "b." No landowner had notified the county that the bush posed an obstacle to vision from the driveway; therefore, it was not subject to removal under paragraph "c."

In its brief, the county argues that its policy was that it *"would not* check or maintain vision clearance *except as set forth in its policy."* (Emphases added.) Although Boldt did not describe the county policy in those terms in his affidavit, he did set forth the instances in which the county *would* clear brush from the unpaved portions of its roads, and he did state that in not removing the bush, the county had acted in conformance with that policy. Therefore, by negative implication, the county's policy provided that the county *would not* clear brush on the unpaved portions of its roads *except in the two circumstances specified in its policy.* As applied to the facts of this case, the policy provided that the county *would not* remove the bush located on the unpaved portion of its roads, *unless notified by a private landowner to do so.*

■ Having described the road-maintenance duties owed by the county, and the policy upon which it rests its claim of discretionary immunity, we next determine whether the county established that its policy was a choice within the "range of permissible choices" of means to carry out its duties, and not a "choice of not exercising care." *Mosley,* 315 Or at 92. *See Vokoun,* 335 Or at 31 (county has burden to establish discretionary immunity). Because this issue arises on the county's motion for summary judgment,[9] the county must demonstrate that the record shows that "there is no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." ORCP 47 C. As that rule further provides:

---

[9] Plaintiff did not move for summary judgment, and therefore we do not consider the question of whether plaintiff would be entitled to prevail on the issue of discretionary immunity as a matter of law.

"No genuine issue as to a material fact exists if, based on the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."

In this case, because plaintiff is the adverse party, we view the record in the manner most favorable to plaintiff to determine whether an objectively reasonable juror could return a verdict for plaintiff on the defense of discretionary immunity.

The record discloses that, although no landowner had informed the county that the offending bush posed a hazard, Boldt personally had observed the bush and was familiar with its location.[10] However, the county had not received a request from a landowner to remove the bush and, therefore, pursuant to its policy, the county did not remove it. Significantly, the record also discloses that the county had not informed landowners that it was relying on them to give the notice that was a necessary prerequisite to county action.

■ The county based its discretionary immunity defense on a decision to rely on landowners, over whom it had no right of control, to perform a key function in carrying out its road maintenance duties.[11] However, on summary judgment, the county did not demonstrate that it had put its policy into effect by communicating it to those landowners. Merely weighing costs and benefits and making a decision, even if that decision might qualify as a permissible discretionary decision, is not sufficient to entitle a government to immunity. The government must also demonstrate that it took the action necessary to effectuate that decision. So, for example, if a government made a policy-level choice about which road signs to install, its decision could be described as discretionary, but that decision alone would not entitle the government

---

[10] In his affidavit, Boldt stated that he was very familiar with the scene of the accident, passed by its exact location at least twice a week, and knew the location of the bush by personal observation.

[11] This court previously has held that a city was not entitled to summary judgment on its claim of discretionary immunity when a city enacted an ordinance requiring that abutting landowners remove foliage obscuring stop signs. *Pritchard v. City of Portland*, 310 Or 235, 241, 796 P2d 1184 (1990) (summary judgment inappropriate when plaintiff is suing city for city's failure to cut foliage, not for its decision to require landowners to do so).

to immunity: The government would also have to show that it had installed the signs that it had selected. Even if the county's decision to have others act for it could constitute a permissible means of carrying out its duties—an issue that we need not and do not decide—the county is not entitled to immunity on this record because it did not demonstrate that it had implemented its policy. In particular, the county did not establish that it had informed landowners that it was relying on them to signal the need for brush removal. We hold that the trial court erred in granting the county's motion for summary judgment.

In stating our holding, we emphasize that we address only the county's affirmative defense of discretionary immunity. The issue presented does not require us to decide, and we do not decide, whether the county can be held liable to this plaintiff on his negligence claim. Issues remain as to whether a reasonable factfinder could find that the county acted unreasonably in failing to cut the bush in question. On remand, the county is entitled to argue that, given its fiscal constraints and the foreseeable risk of harm, it cannot be subject to liability for negligence. *See Donaca v. Curry County*, 303 Or 30, 36-38, 734 P2d 1339 (1987) (county liability for failing to maintain right-of-way depends on whether county's action was reasonable in light of risk, including feasibility and cost of avoiding risk). Today we decide only that the trial court erred in granting summary judgment in favor of the county on its discretionary immunity defense.[12]

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed and the case is remanded to the circuit court for further proceedings.

---

[12] We also do not reach plaintiff's contention that the trial court erred in granting summary judgment because there was a question of fact as to whether Boldt actually had adopted the county policy that he recited.