Argued and submitted November 18, 2008, affirmed May 27, petition for review denied September 17, 2009 (347 Or 44)

Patricia L. TIMBERLAKE,
as personal representative for
the Estate of Matthew R. Lyon, deceased,
*Plaintiff-Appellant,*

*v.*

WASHINGTON COUNTY,
*Defendant-Respondent.*

Washington County Circuit Court
C063473CV; A136851

209 P3d 398

Linda K. Eyerman argued the cause for appellant. With her on the briefs was Gaylord Eyerman Bradley, P.C.

William G. Blair, Senior Assistant County Counsel, argued the cause for respondent. With him on the brief was Dan R. Olsen, County Counsel, Office of County Counsel.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

## LANDAU, P. J.

This is a wrongful death action arising out of a vehicle collision on a public road over which defendant Washington County had jurisdiction and maintenance authority. Plaintiff, the personal representative of the individual killed in the collision, alleges that the county was negligent in failing to remove foliage that had grown at the site of the collision and that blocked visibility from the vehicle with which the decedent collided. The county moved for summary judgment on discretionary immunity grounds, based on the fact that its failure to maintain the collision site was the product of a budget-driven policy decision about the allocation of its limited resources available for road maintenance. The trial court granted the motion.

Plaintiff appeals, arguing that, as a matter of law, discretionary immunity does not apply to a county's obligation to maintain its roads and that, in any event, a local government cannot avoid liability merely because of limited financial resources. We conclude that, under settled law, discretionary immunity may apply to a local government's obligation to maintain roads and that limited fiscal resources available for road maintenance may justify a policy decision about how those limited resources are spent. We conclude that the trial court did not err in granting the county's summary judgment motion.

The relevant facts are not in dispute. Washington County is responsible for the maintenance of approximately 1,279 miles of public roads. Funding for road maintenance is limited. It derives primarily from two sources, both outside the county's control—a county road fund based on fuel taxes and weight/mile fees distributed by the State of Oregon and property tax revenue from the Urban Road Maintenance District, which is subject to a constitutional cap.

In the face of limited funding for road maintenance, the county's Board of Commissioners passed a resolution adopting a road maintenance policy on June 22, 2004, that dictates how those limited resources would be allocated during the following year. That road maintenance policy provides that approximately two-thirds of the county's road

maintenance funds are allocated to scheduled, routine maintenance based on a priority matrix set by the functional classification of roads, and the remaining third is allocated to responding to complaints, extreme weather (snow, ice, floods, and the like), and other unplanned emergencies requiring service.

On June 3, 2005, Matthew Lyon rode his motorcycle southbound on SW Scholls Ferry Road in Washington County. As he approached the intersection with SW Raleighwood Way, a Ford Escort pulled out from Raleighwood onto Scholls Ferry, directly into the path of Lyon's motorcycle. The vehicles collided. Lyon died from injuries sustained in the collision.

At the time of the accident, vegetation growing near the intersection and along the shoulder of Scholls Ferry was overgrown, interfering with visibility for drivers pulling out from Raleighwood onto Scholls Ferry. Because of that vegetation, the driver of the Ford Escort did not see Lyon on his motorcycle and was not aware that she was driving directly into his path. During the previous year, the county had not received any reports of visibility hazards at the intersection, and it was not scheduled for maintenance during that period under the county's road maintenance policy (except for some herbicide spraying scheduled for later that year). Nor was there any evidence that anyone at the county involved with road maintenance had actual knowledge of the existence of a visibility hazard at the intersection.

Plaintiff initiated this action against the county for negligence. Plaintiff alleged that the county was negligent in failing to remove or trim back the foliage at the intersection where Lyon was killed, in failing to maintain that foliage to allow for ordinary growth without obscuring or obstructing motorist visibility, in failing to inspect the intersection for visibility hazards, and in failing to discover the visibility hazard that did exist and that contributed to Lyon's death.

The county asserted an affirmative defense of discretionary immunity. The county alleged that it had adopted and implemented a policy not to inspect county roads for vegetation hazards and, instead, to trim or remove vegetation according to a preestablished maintenance schedule and in

response to citizen complaints and notification of particular hazards and emergencies.

The county moved for summary judgment on its discretionary immunity defense. It supported its motion with affidavits attesting to the foregoing facts about its road maintenance policy. In response, plaintiff did not contest the existence of the policy, its validity, or the adequacy of its implementation. In particular, plaintiff did not dispute that the county adopted and implemented its policy, developed by upper-level management through the exercise of judgment in the allocation of limited funds and that, in failing to inspect, discover, or remove the foliage at the intersection of Scholls Ferry and Raleighwood, the county was carrying out its road maintenance policy. Plaintiff's response was more narrowly one of law, *viz.*, that, as a matter of law, discretionary immunity does not apply to decisions that are a product of limited resources. In plaintiff's words: "Counties may not avoid liability for negligence by putting costs over the safety of the traveling public." Based on *Donaca v. Curry Co.*, 303 Or 30, 36-38, 734 P2d 1339 (1987), plaintiff argued that "discretionary immunity does not apply where a defendant has a duty imposed by law." According to plaintiff, the county has a duty imposed by law to keep its roads safe, which may not be avoided simply because funds are limited. The trial court granted the county's motion and entered a general judgment in favor of the county.

On appeal, plaintiff essentially reprises the same contentions that she advanced to the trial court. She contends that road maintenance "is a ministerial function or duty of government entities in Oregon, and all decisions pertaining thereto must be made in the exercise of reasonable care to prevent foreseeable harm." Discretionary immunity, she contends, simply does not apply. Further, she argues, "under the Oregon Tort Claims Act, public bodies are not immune from liability because their financial resources are limited." Plaintiff does not contend that there exist any genuine issues of material fact. Her contentions on appeal are solely that, on the facts in the record, the county is not entitled to judgment on its discretionary immunity defense as a matter of law.

The county responds that plaintiff's categorical legal contentions have been addressed and rejected by this court on a number of occasions, in particular, in *Sager v. City of Portland*, 68 Or App 808, 684 P2d 600, *rev den*, 298 Or 37 (1984); *Ramsey v. City of Salem*, 76 Or App 29, 707 P2d 1295 (1985); and *Ramirez v. Hawaii T & S Enterprises, Inc.*, 179 Or App 416, 39 P3d 931, *rev den*, 335 Or 114 (2002). Plaintiff replies that those cases were wrongly decided and should be overruled.

After this case was submitted, the Oregon Supreme Court decided *Hughes v. Wilson*, 345 Or 491, 199 P3d 305 (2008), in which the court reversed the dismissal, on grounds of discretionary immunity, of a negligence action against a county on facts somewhat similar to those in this case. In supplemental briefing, plaintiff contends that this case is controlled by the Supreme Court's decision in *Hughes*. The county contends that the court's decision in that case is completely distinguishable.

As we have noted, there appear to be no genuine issues of material fact. The sole question, consequently, is whether the county is entitled to judgment as a matter of law. ORCP 47 C; *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001).

ORS 30.265(3)(c) provides, in part:

"Every public body and its officers, employees and agents acting within the scope of their employment or duties * * * are immune from liability for:

"* * * * *

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

ORS 30.265(3)(c) confers immunity on the county, as a public body, from liability for the negligent performance or nonperformance of a "discretionary function or duty."

■      Case law has established the guidelines for determining what functions or duties are discretionary. Governmental defendants are protected from liability for decisions

that require a policy judgment by a person or body with governmental discretion. *Little v. Wimmer*, 303 Or 580, 588, 739 P2d 564 (1987); *see also Vokoun v. City of Lake Oswego*, 335 Or 19, 31, 56 P3d 396 (2002). In *McBride v. Magnuson*, 282 Or 433, 436-37, 578 P2d 1259 (1978), the court described the type of decision that is "discretionary" for purposes of ORS 30.265(3):

> "[N]ot every exercise of judgment and choice is the exercise of discretion. It depends on the kind of judgments for which responsibility has been delegated to the particular officer. Discretion, as this court has noted in other contexts, involves 'room for policy judgment,' * * * or the responsibility for deciding 'the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued.' * * * It involves the delegated responsibility for 'assessment and ranking of the policy objectives explicit or implicit in the statute' and for the judgment that one or more of these objectives will be served by a given action * * *. In other words, insofar as an official action involves both the determination of facts and simple cause-and-effect relationships and also the assessment of costs and benefits, the evaluation of relative effectiveness and risks, and a choice among competing goals and priorities, an official has 'discretion' to the extent that he has been delegated responsibility for the latter kind of value judgment."

(Citations omitted.)

Thus, decisions entitled to immunity are those that involve the exercise of discretion in developing or implementing policy objectives through the assessment of costs and benefits, the evaluation of effectiveness of risks, and the choice among competing goals and priorities. *Id.* Immunity does not apply to routine decisions made by employees in the course of day-to-day activities, even though the decisions involve a choice among two or more courses of action. *Lowrimore v. Dimmitt*, 310 Or 291, 296, 797 P2d 1027 (1990); *see also Mosley v. Portland School Dist. No. 1J*, 315 Or 85, 89, 843 P2d 415 (1992) (stating test for discretionary immunity). Nor does discretionary immunity protect a decision not to exercise care at all, if action of some kind is required. *Garrison v. Deschutes County*, 334 Or 264, 274, 48 P3d 807 (2002). The burden is on the governmental defendant to establish its

immunity. *Stevenson v. State of Oregon*, 290 Or 3, 15, 619 P2d 247 (1980).

■　　With those general principles in mind, we turn to the particular arguments at issue in this case. As we have noted, plaintiff first asserts that discretionary immunity does not apply to a county's obligation to safely maintain roads within its jurisdiction. The county responds that the argument has been rejected by this court on a number of occasions. The county is correct.

In *Sager*, the plaintiff was injured when she tripped on a defective sidewalk. She sued the City of Portland, arguing that the city negligently maintained the sidewalk. The city averred that it was subject to discretionary immunity on the ground that its failure to repair the sidewalk was a consequence of a repair schedule driven by budgetary constraints. The trial court dismissed the case on discretionary immunity grounds. 68 Or App at 811-12. The plaintiff appealed, arguing that the city had a legal duty to safely maintain its sidewalks, which could not be avoided by discretionary immunity. We rejected the argument, commenting that "[i]t is clear here that the City had a duty to inspect its sidewalks. * * * It does not necessarily follow, however, that every breach of a duty results in liability." *Id.* at 812 (citations omitted). That is so, we held, because the discretionary immunity afforded by ORS 30.265 may relieve a government of liability for what might otherwise be a breach of a duty. *Id.* In that case, we explained, the evidence showed that the failure of the city to inspect the sidewalk was a discretionary act, occasioned by its "balancing of competing priorities" in the face of budgetary constraints. *Id.* at 815.

Similarly, in *Ramsey*, the plaintiff fell on a sidewalk and sustained injuries. She sued the City of Salem, alleging that the city was negligent in failing to repair the sidewalk. The city asserted that, among other things, it knew nothing about the defective sidewalk and that its lack of knowledge was a product of a maintenance policy adopted by the city council as a part of the adoption of the city's budget. The trial court entered summary judgment for the city on discretionary immunity grounds. 76 Or App at 31. Quoting *Sager*, this court affirmed:

" 'Municipalities with fixed budgets must always struggle to allocate limited resources appropriately, and we are constrained against finding that the legislature intended to impose liability in such circumstances.

" 'We conclude that the failure of the City to inspect and repair its sidewalks is a discretionary act and immune from liability.' "

*Ramsey*, 76 Or App at 31 (quoting *Sager*, 68 Or App at 815).

In *Ramirez*, the plaintiff was injured when she fell after stepping from a broken curb at a downtown Portland intersection that she contended the city negligently failed to inspect, maintain, and repair. The city obtained summary judgment dismissing the plaintiff's claims on discretionary immunity grounds, based on evidence that the city's failure to inspect, maintain, and repair the sidewalk was a product of a policy decision to divert funds from sidewalk maintenance to what the city believed to be more urgent tasks arising from the consequences of serious flooding of the Willamette River in the winter of 1996. 179 Or App at 420-21. We affirmed, "readily conclud[ing] that the decision to divert city employees from sidewalk inspection duties to flood-related duties was an exercise of discretion as that term is used in ORS 30.265(3)(c)." *Id.* at 422.

Plaintiff acknowledges that her claim against the county in this case founders on the holdings of *Sager*, *Ramsey*, and *Ramirez*. Her argument is that those decisions were simply incorrect. According to plaintiff, each of those cases rests on a fundamental flaw, namely, that the focus of discretionary immunity is the policy decision that resulted in the injury to the plaintiff, not the underlying governmental function or duty itself. If the duty itself is merely "ministerial" and not discretionary, plaintiff contends, discretionary immunity does not apply. In this case, she contends that the underlying duty to maintain safe streets and roads is not a matter of discretion and cannot therefore be subject to discretionary immunity.

The problem with plaintiff's argument is that it is irreconcilable not merely with *Sager*, *Ramsey*, and *Ramirez*, but also with a long line of Supreme Court decisions about the meaning and application of ORS 30.265. Those decisions

make clear that, although a local government may not simply choose *not* to exercise a particular duty of care with which it is charged, nevertheless, it has discretion to choose *how* to carry out that duty. In *Miller v. Grants Pass Irrigation*, 297 Or 312, 320-21, 686 P2d 324 (1984), for example, the court delivered the following response to precisely the same argument that plaintiff advances in this case:

> "ORS 30.265(3)(c) provides immunity against '[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty.' A claimant might argue that when safety precautions of some kind are obligatory, the function or duty simply is not discretionary and ORS 30.265(3)(c) does not apply. But this would mean that even when a precaution is chosen, negligence in making that choice, that is to say, in the performance of the function, is no more immune than failure to perform it altogether. A defendant, in turn, might argue that as long as the choice among different precautions involves significant elements of policy, taking into consideration competing values, consequences, and priorities, the function is discretionary, and total disregard of the duty is as immune as failure to perform it before the injury has occurred.

> "The concept of a 'discretionary function or duty' is notoriously obscure and difficult, but we do not believe the legislature intended either of these extreme results. One extreme would swallow up the concept of discretion by holding a public body liable whenever it is found not to have actually satisfied its tort duty. The other extreme would put a premium on ignoring the duty and simply failing to exercise the function of choosing among safety measures. The dilemma posed by the statute is not inescapable. Rather, we conclude that the line runs between the extremes. The line runs between deciding whether to take precautions, a duty which under the circumstances of a particular case may not be discretionary, and deciding what precautions to take, which may or may not involve discretionary policy issues."

More recently, in *Garrison*, 334 Or at 274, the court offered a somewhat more pithy response, but to the same effect: "[T]he decision *whether* to protect the public by taking preventive measures, or by warning of a danger, if legally required, is not discretionary; however, the government's choice of *means*

for fulfilling that requirement may be discretionary."
(Emphasis in original.)

In short, we decline to reconsider *Sager*, *Ramsey*,
and *Ramirez*. It necessarily follows that plaintiff cannot pre-
vail on her contention that local government road mainte-
nance decisions are not subject to discretionary immunity
under ORS 30.265(3).

■ In a similar vein, plaintiff argues that, even if a
county's road maintenance decisions *may*, in some cases, be
subject to discretionary immunity, they are not subject to dis-
cretionary immunity merely because of the county's budget
problems. The sole authority that plaintiff offers for that
proposition is the Supreme Court's opinion in *Donaca*.

A fair reading of *Donaca*, however, simply does not
support plaintiff's argument. In that case, the plaintiff was
injured in a highway accident that he alleged was caused in
substantial part by Curry County's failure to trim certain
grasses that grew at the intersection where the accident
occurred. The county moved to dismiss the complaint for fail-
ure to state a claim on the ground that it did not have a duty
to cut the grass, and the trial court granted the motion. This
court affirmed on the ground that the potential costs of con-
trolling the vegetation at the intersection were so great as to
supply a "public policy argument against imposing such a
duty" on the county. *Donaca v. Curry Co.*, 77 Or App 677,
683-84, 714 P2d 265 (1986). The Supreme Court reversed on
the ground that, under *Fazzolari v. Portland School Dist. No.
1J*, 303 Or 1, 734 P2d 1326 (1987)—decided that same day—
the absence of a "duty" generally does not provide a basis for
dismissal of a negligence complaint. *Donaca*, 303 Or at 32-33.
The court acknowledged that other state courts took a differ-
ent view in fashioning rules of negligence liability based on
their own evaluation of costs and benefits. *Id.* at 34-36. But it
rejected that approach. *Id.* at 36. There followed this
comment:

> "Similarly, we do not immunize counties from whatever
> responsibility for visibility of intersections they otherwise
> might have in order to relieve them of the cost of defending
> against unsuccessful claims. Nor are counties immune from

liability that owners of private roads would face under identical circumstances merely because precautions are costly. The Oregon Tort Claims Act squarely enacts the contrary policy toward both defenses."

*Id.* at 36-37. It is on the foregoing quotation that plaintiff relies for her contention that budget shortages cannot supply the basis for a discretionary immunity defense.

Plaintiff's reading of *Donaca* is untenable. To begin with, as we have just noted, the context for the court's comment was this court's decision—as well as similar decisions in other jurisdictions—that the costs to a municipal government of taking particular action may justify a court's conclusion that there is no *duty* to take such action in the first place. It bears recalling that *Donaca* was an appeal from a dismissal on the county's motion to dismiss for *failure to state a claim*. When the court mentioned liability under the Oregon Tort Claims Act, it was referring—correctly—to the fact that ORS 30.265(1) provides that, subject to limitations such as the discretionary immunity defense, "every public body is subject to action or suit for its torts[.]" Discretionary immunity was not in issue; indeed, it was not mentioned in the opinion at all.

Moreover, the Supreme Court has repeatedly stated that decisions "that require supervisors or policy makers to assess *costs and benefits*, and to make a choice among competing goals and priorities" are precisely the kinds of decisions that are the subject to discretionary immunity. *Vokoun*, 335 Or at 31 (emphasis added); *accord Stevenson*, 290 Or at 14-15 ("If the responsible officials had determined, for example, that their budgets would not permit them to provide all desirable safety features and that the public would be better served by facilities other than cattle guards or median barriers, that would constitute the immune exercise of governmental discretion.").

There remains the question whether the Supreme Court's recent decision in *Hughes* affects the disposition of this appeal. In *Hughes*, the plaintiff was injured in a vehicle collision caused in part by the fact that a motorist could not see him as he was driving out of his driveway because nearby vegetation blocked his visibility. The plaintiff brought an action against the county responsible for the maintenance of

the road, alleging negligent failure to inspect and maintain. The county moved for, and was granted, summary judgment on discretionary immunity grounds. The county admitted that it was aware of the fact that the vegetation needed maintenance, but it relied on a policy of not taking any action to check or maintain visibility clearance for private driveways unless private landowners gave notice to the county of their impaired visibility. 345 Or at 494.

On appeal, the plaintiff argued—as plaintiff does in this case—that a county's duty to safely maintain its roads is not subject to discretionary immunity, as a matter of law. In the alternative, the plaintiff argued that the policy at issue in that case could not support dismissal on discretionary immunity grounds because the county "did not actually implement the policy." As argued by the plaintiff in their briefs to the Supreme Court, the county had never informed private landowners about its policy; as a result, "the adjacent landowners had been assigned a duty of which they had no way of knowing." *Hughes v. Wilson*, Petitioners' Brief, 2008 WL 2211069.

The Supreme Court did not reach the plaintiff's first argument because it concluded that he was correct about his second. That is, the court concluded that,

> "[e]ven if the county's decision to have others act for it could constitute a permissible means of carrying out its duties— an issue that we need not and do not decide—the county is not entitled to immunity on this record because it did not demonstrate that it had implemented its policy. In particular, the county did not establish that it had informed landowners that it was relying on them to signal the need for brush removal."

345 Or at 502.

*Hughes* is not controlling in this case. To begin with, the policy at issue in this case is not comparable to the one at issue in *Hughes*. The policy in this case requires a specified percentage of funds to go to a regular schedule of maintenance. In addition, the county reserves a certain percentage for emergencies and customer complaints. The county in this case did not simply delegate its maintenance responsibilities to private landowners. Moreover, and more importantly, plaintiff in this case has made no argument that the county

has failed to implement its road maintenance policy. From the trial court to this court, plaintiff's argument has been narrow and consistent, challenging the applicability of discretionary immunity on the grounds that we have identified. Even in supplemental briefing following the issuance of the decision in *Hughes*, plaintiff did not assert—as the plaintiff in *Hughes* plainly did—that the county had failed to implement its policy.

We therefore conclude that, on the record before us, the county established that it was entitled to judgment as a matter of law on its defense of discretionary immunity.

Affirmed.